**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MIDLAND ROSS, INC., Respondent.**

**Nos. 79–1175, 79–1553.**

United States Court of Appeals, Sixth Circuit.

Jan. 8, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, Steven Fetter, N. L. R. B., Washington, D. C., Emil C. Farkas, Director, Region 9, N. L. R. B., Cincinnati, Ohio, for petitioner.

Asa Ambrister, Gardner, Ambrister & Smith, Nashville, Tenn., George V. Gardner, Washington, D. C., for respondent.

Before WEICK, KEITH and KENNEDY, Circuit Judges.

**ORDER**

The National Labor Relations Board petitions for enforcement of two orders issued by the Board, one finding that defendant violated Sections 8(a)(3) and (1) of the National Labor Relations Act by discriminatorily terminating employee Earl A. Rose for engaging in union activities; the second finding that defendant violated Section 8(a)(5) and (1) of the National Labor Relations Act by refusing to bargain with the certified union.[1] Both cases have been consolidated on appeal.

Midland Ross is an Ohio corporation, engaged at its Louisville, Kentucky facility in the business of warehousing and distribut-

---

**1.** 239 N.L.R.B. 169 (1979) and 243 N.L.R.B. 179 (1979) respectively.

ing plastic products. Earl Rose was hired in January, 1975, to work in the Louisville warehouse along with three other employees. In July, 1976, John Schneider, was hired as supervisor and plant manager and charged with making the warehouse run more smoothly and efficiently. Sometime in the fall of 1976, Schneider and Gerald Ose, Director of Marketing for the Material Handling Division, discussed reducing the number of warehouse personnel by one. The proposed budget for 1977 dated January, 1977, showed three instead of four warehousemen. The reduction was scheduled for implementation sometime in the second quarter of 1977. As the warehouseman with the least seniority, Rose would be the employee terminated.

On March 14, 1977, Schneider completed a mortgage reference form for Rose answering the question "probability of continued employment" as "Good." About a week later, Dave Collier, the lead warehouseman, told Rose and two of the other warehouse employees that they were suspended for three days for tampering with another employee's time cards in violation of company rule 12. They appealed to Schneider at which time Rose remarked, "If we had a union in here, this kind of stuff wouldn't happen." Schneider reduced the suspension from three days to the balance of that afternoon.

On March 24, Ose sent Schneider a memo asking how the plan for reducing the warehouse employees by one was going.

Following the time card incident, Rose discussed organizing with two other warehousemen, Wood and Downs. Rose contacted, and arranged a meeting with the assistant to the president of Local 89. Subsequent to this meeting, Rose passed out authorization cards at work where they were completed. The cards were signed on March 28, 1977. Schneider was notified three days later of the union's demand for recognition.

On April 11, 1977, Rose went on vacation. Several days later he asked for and was granted two more vacation days although he was told that the company "needed him." When Rose called on April 18, 1977, to request several more vacation days he was told he was terminated for lack of work. Two days after Rose was terminated for lack of work, Wilbur Allison, the fourth warehouse employee, quit the warehouse after he was threatened with suspension. The stamping work performed by Allison was redistributed to the Dawson Springs facility after Allison quit.

Several discussions took place among Ose, Tom Bruser, Industrial Relations Manager, and George Gardner, Midland's labor counsel, between March 31 and April 15. On April 15, Schneider was told to proceed with the decision to terminate Rose.

On May 19, 1977, the Board conducted an election in a unit comprised of Midland Ross's five warehouse employees including Rose who had been terminated the month before. Midland Ross challenged Rose's ballot claiming that Rose was not an employee at the time of the election and thus was ineligible to vote. The Board disagreed and ordered Rose's ballot counted resulting in three votes for and two against the union. Midland Ross admits that it has refused and continues to refuse to bargain with the union certified as exclusive bargaining representative on January 29, 1979. The company argues that the Board's finding that Rose was improperly terminated for union activities is not supported by substantial evidence. Thus Rose was no longer an employee and ineligible to cast the vote which resulted in electing the union.

Midland Ross contends that there is no substantial evidence that it knew that Rose was active on behalf of the union. Although the evidence is not extensive, we hold that in view of the very small work force involved, Rose's statement "if we had a union," followed a week later by the union demand for recognition permits the inference that Midland Ross knew of Rose's union activities. This inference, when added to the timing of the discharge which

occurred immediately after Schneider had stated that Rose was needed at work and had completed the mortgage information form stating the probability of his continued employment was good is substantial evidence that the discharge was due in part to his union activity, rather than the explanation offered by Midland Ross. Although we might well reach a conclusion different than that of the Board's, its inferences are reasonable and thus entitled to affirmance by the Court.

Accordingly, the Board's application for enforcement of its orders is granted.