**In re CONTINENTAL AIRLINES CORPORATION, Continental Airlines, Inc. Texas International Airlines, Inc., TXIA Holdings Corporation.**

Bankruptcy Nos. 83–04019–H2–5, 83–04020–H1–5, 83–04021–H3–5 and 85–04022–H3–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 26, 1986.

See also 64 B.R. 862, 64 B.R. 874, 64 B.R. 882.

John J. Gallagher, Clinton R. Batterton, Richard N. Appel, Charles L. Warren, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., Harvey R. Miller, Bruce Zirinsky, Weil, Gotshal & Manges, New York City, Myron M. Sheinfeld, Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., for Continental Airlines Corp.

Claude Montgomery, Beatrice R. Kahn, Booth, Marcus & Pierce, New York City, Bruce Simon, Michael Abram, Babette Ceccotti, Cohen, Weiss & Simon, New York City, for Air Line Pilots Ass'n.

FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO MOTION TO DISALLOW OR TO ESTIMATE AT ZERO VALUE THE CONTRACT REJECTION DAMAGES CLAIMS FILED BY THE AIR LINE PILOTS ASSOCIATION

T. GLOVER ROBERTS, Bankruptcy Judge.

The following facts are either stipulated, uncontested or established by the evidentiary record in this case, of which the Court takes notice and is considered a proper and adequate basis on which to make these Findings and Conclusions:

FINDINGS OF FACT

1. On September 24, 1983, the Debtors filed petitions for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*

2. Thereafter, Continental filed a motion pursuant to § 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a), to reject the collective bargaining agreement between Continental Airlines, Inc. ("Continental") and the Air Line Pilots Association ("ALPA"). After an extended evidentiary hearing, the Court on June 19, 1984, entered its order rejecting the collective bargaining agreement between Continental and ALPA that had been in effect on the day Continental filed its bankruptcy petition. Order Allowing Rejection of Collective Bargaining Agreements June 19, 1984. On April 26, 1985, ALPA filed a proof of claim in the amount of $408,348,552.00 for damages arising from the rejection of the collective bargaining agreement.

3. By its terms, the ALPA contract was amendable on September 30, 1984.

4. In its proof of claim, ALPA claimed contract rejection damages for the period September 24, 1983 through and including September 30, 1985, one full year after the scheduled amendable date.

5. On September 23, 1985, Continental filed a Motion for Summary Judgment on Liability for Contract Rejection Damages and to Estimate the Value of Contract Damage Claims. ALPA and the Union Committee strongly opposed Continental's motion.

6. The ALPA contract relative to the motion here is in evidence in the record described above of which this Court has taken notice. This contract is clear and unambiguous. The contract does not contain any guarantee of employment. Instead, it contains terms as to the wages and working conditions which will be provided to employees covered by the agreements when work is available. When work is not available, the contract provides that management may furlough employees, subject to notice of furlough and furlough pay requirements, which themselves are subject to exceptions for various contingencies not within management's control.

7. At the time of the filing of the bankruptcy petitions in this matter, Continental unilaterally modified work rules and reduced wages and fringe benefits paid to pilots represented by ALPA as well as those of flight attendants and other employees, pending this Court's approval of Continental's motion to reject the contracts under 11 U.S.C. § 365. *See In re Continental Airlines Corp.*, 38 B.R. 67 (Bankr. S.D.Tex.1984). This Court approved the rejection of the pilot contract, effective retroactively to September 24, 1983, in accordance with 11 U.S.C. § 502(g). This

Court found that if Continental had not made changes in its labor contracts, including specifically the ALPA contract, within a short time Continental would have run out of cash and gone out of business. Memorandum of Authorities Authorizing Rejection of Air Line Pilots Association Collective Bargaining Agreements (August 17, 1984) at 33; Findings of Fact and Conclusions of Law Relating To The Rejection Of The Collective Bargaining Agreement With ALPA (August 17, 1984) at ¶¶ 28, 40.

## CONCLUSIONS OF LAW

1. The unions contend that this Court, which rejected the ALPA and UFA collective bargaining agreements pursuant to the Bankruptcy Code itself, 11 U.S.C. § 365, now does not have jurisdiction to liquidate the claim or to estimate the value of any damages created thereby through the Bankruptcy Code "breach" of these contracts. 11 U.S.C. § 365(g). This contention is clearly without merit. Bankruptcy courts have jurisdiction to decide the allowability of *all* claims against an estate. 28 U.S.C. §§ 1334(a), 157(b)(1), (b)(2)(B).

2. The Court has jurisdiction to resolve on the merits the question of liability, if any, and damage claims for contract rejection presented by the present motion. The motion does not require direct interpretation or application of the statutory language of Federal Labor Statutes or any other federal statutes regulating any interstate commerce, and therefore § 157(d) is inapplicable here. The question rests squarely in the bankruptcy claims adjudication process. 11 U.S.C. § 502. *In re Continental Air Lines, Inc.,* Order Granting Debtors' Motion to Estimate, 57 B.R. 842 (S.D.Tex.1985).

3. Further, use of the estimation procedure by this Court will allow Continental's reorganization plan to proceed without unnecessary or costly delay to Continental or other creditor groups who may have reached agreement relative to debt repayment. The estimation procedure can, however, be simplified by resolution of the summary judgment issues now on file by the Court's review of undisputed facts and facts previously established in the case, and application of the appropriate law.

4. The courts have recognized that bankruptcy judges have discretion to determine the allowability of claims in bankruptcy even if the claim ordinarily would have been liquidated by another tribunal. Of course, in the absence of bankruptcy, *every* claim would have been resolved in another forum. In *Zimmerman v. Continental Air Lines, Inc.,* 712 F.2d 55, 56 (3d Cir. 1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), a manufacturing company entered into a contract with Continental which contained an arbitration clause. The Arbitration Act, 9 U.S.C. §§ 1–208, "requires a federal court to stay proceedings pending arbitration if issues pertinent to the dispute are also the subject of an arbitration agreement between the parties." 712 F.2d at 56. Subsequently, the manufacturing company went into bankruptcy and initiated adversary proceedings against Continental alleging that Continental's claim under the contract was improper. Under the authority of the Arbitration Act, Continental requested that the matter be deferred to arbitration.

The bankruptcy court there denied Continental's request, the Third Circuit affirmed, and the Supreme Court denied certiorari. Relying on the policies underlying the 1978 Bankruptcy Reform Act, the Third Circuit held that the Act impliedly modified the express provisions of the Arbitration Act. 712 F.2d at 56, 59.

Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction. *See* 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. *Therefore, because of the importance of bankruptcy proceedings in general,*

*and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the bankruptcy Reform Act is read to impliedly modify the Arbitration Act.* Thus while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the Bankruptcy Court.

712 F.2d at 59–60 (emphasis supplied).

5. The unions rely upon *Gary Aircraft Corp. v. United States (In re Gary Aircraft Corp.)*, 698 F.2d 775 (5th Cir.), *cert. denied,* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983), and argue that bankruptcy courts lack jurisdiction to disallow claims in disputes that Congress has committed to a specialized tribunal. The union's reliance on *Gary Aircraft* is misplaced. *Gary* merely established that, under the 1898 Act, bankruptcy courts ordinarily should defer to the Armed Services Board of Contract Appeals ("ASBCA") for the liquidation of claims arising from government defense contracts. (The *Gary* case factually originated with Gary filing a claim under its contract against the government, and with the government filing a counterclaim.) The case does not provide that bankruptcy courts have no "jurisdiction" over such claims. Moreover, the Fifth Circuit based its decision on its findings that deferral would not impair the satisfaction of other bankruptcy claims and that government contracts are extremely complex, technical and esoteric, 698 F.2d at 782, *not* on the proposition that every claim in bankruptcy which otherwise would have been decided by a "specialized tribunal" should be liquidated by that tribunal.

To the contrary, the Fifth Circuit expressly acknowledged that, where bankruptcy court estimation or liquidation by the ASBCA would unduly delay the administration of the estate, the bankruptcy court retains the power under the 1898 Act to disallow the claim in its entirety. 698 F.2d at 784 n. 7. Under the 1978 Bankruptcy Code, which applies to this proceeding, the authority of a bankruptcy court to estimate the value of unliquidated claims is, if anything, even stronger, since new 11 U.S.C. § 502(c) *requires* the court to estimate the value of unliquidated claims where liquidation would unduly delay reorganization.[1] The 1978 Act significantly expanded bankruptcy subject matter jurisdiction:

> [The 1978 Act] evidenced a strong Congressional and federal policy in favor of the newly created bankruptcy court having jurisdiction which is sufficiently broad to promptly and expeditiously hear and determine all controversies involving matters of law, equity and even admiralty.

*In re Cross Electric Co.,* 9 B.R. 408, 410 (Bankr.W.D.Va.1981); *see Zimmerman v. Continental Air Lines, Inc., supra,* 712 F.2d at 56.

6. In addition, Continental's motion for summary judgment and estimation in this claims proceeding presents a very different case for bankruptcy court resolution of the issues than was present in *Gary*. First, unlike *Gary*, the time necessary to complete arbitration of the union's multi-million dollar contract rejection claims could seri-

---

1. *See Addison v. Langston (In re Brints Cotton Marketing, Inc.),* 737 F.2d 1338, 1340–41 (5th Cir.1984); *In re Curtis,* 40 B.R. 793, 801 n. 7 (W.D.La.1984); *In re Nova Real Estate Investment Trust,* 23 B.R. 62, 65 (Bankr.E.D.Va.1982); *In re Brada Miller Freight Systems, Inc.,* 8 B.R. 62 (Bankr.N.D.Ala.1980); 3 *Collier on Bankruptcy* ¶ 502.03 at 502–74, 75 (15th ed. 1985). Accordingly, even if this Court did not have jurisdiction to *disallow* the claim, it is clear that the Court nevertheless would have jurisdiction to *estimate* the value of the contract rejection claims. Order Granting Debtors' Motion to Estimate All Contingent Unliquidated Employee Claims For Purposes of Chapter 11 Confirmation Pursuant to Section 502(c) of the Bankruptcy Code (Sept. 26, 1985). Thus, for example, courts may estimate the value of claims asserted on behalf of employees by the NLRB, without deferring to any NLRB administrative process, which might otherwise apply. *In re Unit Parts Co.,* 9 B.R. 386 (W.D.Okl.1981) (court rejects the same arguments and authorities presented by the unions here, refusing to defer to NLRB, noting that these authorities predate the 1978 expansion of bankruptcy court jurisdiction).

ously impair the claims and interests of the substantial body of other creditors who have already settled with the debtors and now await distribution. As pointed out in another case, in *Gary* "the *only* asset of the bankrupt's estate ... consisted of a ... contractual claim against the United States government." *In re Compton Corp.*, 40 B.R. 880, 884 (Bankr.N.D.Tex.1984). Where resolution of a claim could "affect the amount, existence and priority of claims to be paid out of the general funds, and thus involve the interest of other creditors," courts have held that a bankruptcy judge does not abuse his discretion in refusing to compel arbitration of such a claim. *In re F & T Contractors, Inc.*, 649 F.2d 1229, 1232 (6th Cir.1981); *see Johnson v. England*, 356 F.2d 44, 51–52 (9th Cir.), *cert. denied*, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966). Moreover, since "[p]rotection of general creditors is a major function of ... bankruptcy proceedings," submission of the union claims to arbitration would be particularly unsound because Continental's creditors have not consented to arbitration and would have no right to participate in the arbitration process. 649 F.2d at 1233 n. 1; 356 F.2d at 52.[2]

Second, unlike the ASBCA in *Gary*, RLA arbitration panels (system boards of adjustment) are not specialized tribunals with particular expertise in the specific issues of fact that must be resolved in order to value the claim as it relates to this proceeding. If presented to a system board, bankruptcy contract rejection claims would be decided by arbitrators who would not necessarily be more familiar with the particular contract language or past practice of the parties than is this Court, and who may, like this Court, have to take evidence and hear testimony in order to resolve any actual issues of fact, if any exist. Unlike the Court, however, the arbitrators would have no cognizance of the reorganization or the interests of other creditors. Particularly, in these circumstances, deferral to arbitration is not required. *See In re Amalga-*

*mated Foods, Inc.*, 41 B.R. 616, 617, 619 (Bankr.C.D.Cal.1984) (debtor need not submit claims under the Employee Retirement Income and Security Act to arbitration since the bankruptcy claims process is adequate to resolve claims.)

Third, *Gary* was decided under the 1898 Act. Bankruptcy courts which have considered *Gary* generally have found it inappropriate to defer claims to another forum in cases under the 1978 Code. For example, in *Amalgamated Foods*, the court refused to defer a claim under the Employee Retirement Income Security Act ("ERISA") to arbitration even though the statute contains a mandatory arbitration procedure. Distinguishing *Gary* and *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the court rejected the creditor's contention that the claim required expertise not possessed by the court. 41 B.R. at 618–619. Comparing the bankruptcy claims process under the 1978 Bankruptcy Reform Act to ERISA's statutory arbitration procedure, the court concluded that both procedures furthered the policy of speedy disposition.

> I find that the bankruptcy claims procedure achieves the goal sought by ERISA arbitration—indeed, that the claims procedure may serve that goal better than ERISA arbitration itself. For that reason, I hold that the debtor may bypass arbitration in favor of the claims procedure.

41 B.R. at 616–17. *See also In re Page-Wilson Corp.*, 37 B.R. 527, 529 (Bankr.D. Conn.1984); *In re Compton Corp., supra*, 40 B.R. at 884.

These cases are undoubtedly correct, since the Bankruptcy Reform Act of 1978:

> [S]ignificantly expands the jurisdiction of the bankruptcy courts and is based on the notion that to protect the positions of both the bankrupt and its creditors, bankruptcy actions *should not be subject to unnecessary delay and all claims*

---

**2.** In addition, in arbitration there would be no right to discovery, arbitrators are less likely to follow legal standards than courts, and judicial

review would be limited. *See Zimmerman, Cross* and *Johnson, supra*.

*and issues relevant to such action should be resolved in one expeditious proceeding.*

*Zimmerman v. Continental Air Lines, supra,* 712 F.2d at 56 (emphasis supplied).[3]

7. Finally, and most conclusively, in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court said that claims for damages arising out of the bankruptcy court's own rejection of a collective bargaining agreement *must* be adjudicated *in the bankruptcy court.*

> [C]laims arising after filing, such as result from the rejection of an executory contract, must also be presented through the normal administration process by which claims are estimated and classified. *See* 11 U.S.C. § 502(g); *In re Hoe & Co., Inc.,* 508 F.2d 1126, 1132 (2nd Cir.1974); *Workman v. Harrison,* 282 F.2d 693, 699 (10th Cir.1960). *Thus, suit may not be brought against the debtor-impossession under the collective bargaining agreement;* recovery may be had only through administration of the claim *in bankruptcy.*

104 S.Ct. at 1198–99 (emphasis supplied). Thus, *Gary* presents no obstacle to the resolution of this Court of the claims issues, and the unions' jurisdictional objections are totally without merit.

■ 8. Although the rejection of an executory contract constitutes a breach of that contract, 11 U.S.C. § 365(g), Section 502(b)(1) of the Bankruptcy Code, 11 U.S.C. § 502(b)(1), provides that a claim against an estate in bankruptcy is to be disallowed if such claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The legal standards for measuring the value of a bankruptcy claim for contract breach are therefore the same as those which would be applied if

the bankruptcy had not occurred. *In re Nuisance Corp.,* 17 B.R. 80, 82 (Bankr.D. N.J.1981); 3 *Collier on Bankruptcy* ¶ 502.-02, at 502–24 *et seq.* (15th ed. 1985). A bankrupt in breach of contract pursuant to 11 U.S.C. § 365 may assert any defense to the liability flowing from the statutorily created breach which any other promisor in breach of contract may assert. *Mazirow v. Grigsby (In re White Motor Corp.),* 44 B.R. 563 (N.D.Ohio 1984).

9. The Court must therefore determine the allowability of these claims by applying the appropriate substantive law which would have been applied in the non-bankruptcy context. *See, e.g., Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co.,* 642 F.2d 744, 748 n. 8 (5th Cir.1981); *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946).

■ 10. The rejected contract was entered into pursuant to the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.,* as expressly stated at the outset of the contract. A Railway Labor Act contract, "like the Labor-Management Relations Act § 301 contract, is a federal contract and is therefore governed and enforceable by federal law, in the federal courts." *IAM v. Central Airlines, Inc.,* 372 U.S. 682, 692, 83 S.Ct. 956, 962, 10 L.Ed.2d 67 (1963). The Supreme Court has also held that "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). Although Continental is subject to the Railway Labor Act, the federal courts have often looked to decisions interpreting the National Labor Relations Act, including § 301 of the LMRA amendments to that Act, for guidance in RLA matters. *See generally Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 383, 89 S.Ct. 1109,

---

3. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, did not detract from bankruptcy court subject matter jurisdiction, but merely allocated the exercise of that jurisdiction between the bankruptcy and district courts. 28 U.S.C. § 1334; 1 *Collier on Bankruptcy* ¶ 3.01 at 3–19 to 3–29 (15th ed. 1985); *Carlton v. BAWW, Inc.,* 751 F.2d 781 (5th Cir.1985).

1117, 22 L.Ed.2d 344 (1969) (although NLRA cannot be imported wholesale into the railway labor area, NLRA case law provides "the most relevant corpus of national labor policy"); *Japan Airlines Co. v. IAM*, 538 F.2d 46 (2d Cir.1976) (using NLRA Supreme Court decisions to delineate scope of mandatory subjects of bargaining under the RLA).

■ 11. As a matter of federal labor law, employees subject to a collective bargaining agreement are not entitled to lost future wages as damages under such an agreement when the employer ceases operations, unless the agreement guarantees future employment. *See, e.g., J.I. Case v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1943); *Fraser v. Magic Chef-Food Giant Markets, Inc.*, 324 F.2d 853 (6th Cir. 1963); *American Bakery & Confectionery Workers v. Great Atlantic & Pacific Tea Co.*, 357 F.Supp. 1322 (W.D.Pa.1973), *aff'd mem.*, 491 F.2d 748 (3d Cir.1974); *Abbington v. Dayton Malleable, Inc.*, 561 F.Supp. 1290 (S.D.Ohio 1983), *aff'd mem.*, 738 F.2d 438 (6th Cir.1984); *Union de Trabajadores v. Helio San Jeronimo Corp.*, 434 F.Supp. 643 (D.P.R.1977); *Hotel & Restaurant Employees Alliance, Local 237 v. Allegheny Hotel Co.*, 374 F.Supp. 1259 (W.D.Pa. 1974). As noted above, the contract at issue did not guarantee employment, but only provided the terms and conditions applicable to available work. The presence of contract provisions which permitted management to furlough employees confirms that by their own terms these contracts were not understood or intended to constitute guarantees of employment.

■ 12. As a matter of federal labor law under both the NLRA and the RLA, and as a matter of the common law of contracts in general, no promisee is entitled to more than nominal damages for breach of contract unless that promisee can demonstrate actual injury proximately caused by the breach. *IBEW v. A–1 Electrical Services*, 535 F.2d 1, 3 (10th Cir.), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976); *Brotherhood of R.R. Trainmen v. Denver & R.G.W.R. Co.*, 338 F.2d 407 (10th Cir.1964), *cert. denied*, 380 U.S. 972, 85 S.Ct. 1330, 14 L.Ed.2d 268 (1965); *Restatement (Second) of Contracts* §§ 346–347.

■ 13. As noted above, but for the rejection of the collective bargaining agreement, Continental would have ceased operations and pilots would have had no cognizable claims for lost future wages because the rejected contracts did not obligate Continental to provide employment, but rather only established rates of pay and working conditions for any employment which was available. Federal labor law does not require an award of damages for time periods during which no work would have been available in any event, even where an employee was discharged in violation of the NLRA. *See NLRB v. Biscayne Television Corp.*, 337 F.2d 267, 268 (5th Cir.1964); *Nabors v. NLRB*, 323 F.2d 686, 690 (5th Cir.1964); *Midland Ross, Inc.*, 239 N.L.R.B. 1205 (1979), *order enf'd*, 653 F.2d 239 (6th Cir.1981); *NLRB v. United Contractors, Inc.*, 614 F.2d 134, 138 (7th Cir.1980); *NLRB v. Columbia Tribune Publishing Co.*, 495 F.2d 1384, 1393 (8th Cir.1974); *NLRB v. American Creosoting Co.*, 139 F.2d 193 (6th Cir.1943); *Brown & Root, Inc.*, 112 N.L.R.B. 295 (1955); *Lauren Burt, Inc. of Colorado*, 114 N.L.R.B. 295 (1955); *Hill Transportation Co.*, 102 N.L.R.B. 1015 (1953). But for the Court's rejection of the collective bargaining agreement at issue here, Continental would have gone out of business and pilots represented by ALPA could not have claimed lost future wages as damages, because the agreements did not guarantee future employment.

■ 14. Even if ALPA's claim for damages was meritorious, ALPA's damage calculations are flawed. The amount of damages to be awarded for breach of a collective bargaining agreement is limited by both the termination date of the agreement at issue and by the application of 11 U.S.C. § 502(b)(7). The termination date of the contract establishes the ending date for damage calculation purposes.

The fact that the contract which was breached was due to expire April 30, 1976, is controlling as to the period for which damages may be awarded. Nothing in that contract could have created an expectation that the employees would have continued to enjoy the same wages and benefits beyond the expiration of the contract.

*IBT v. Standard Brands*, 579 F.2d 1282, 1295 (5th Cir.1978), *cert. denied*, 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979). *Accord, UAW v. Roblin Industries*, 561 F.Supp. 288, 298 (W.D.Mich.1983) (rights under agreements can extend beyond expiration date only if agreement so provides); *Sun Oil Co. of Pa. v. NLRB*, 576 F.2d 553, 558 (3d Cir.1978); *Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551, 554 (7th Cir. 1969); *In re Vic Snyder, Inc.*, 23 B.R. 185 (E.D.Pa.1982). As previously noted, the ALPA contract expired by its own terms on September 30, 1984. ALPA's use of September 30, 1985 as the ending date for the contract in its calculations is based upon assertions regarding the "average" length of negotiations in the airline industry. These assertions are unsupported by any probative evidence and have not been shown to bear any relationship to the "average" length of negotiations at Continental and Texas International Airlines, as ALPA's own witnesses admitted in depositions regarding their calculations. Deposition of Dennis Higgins at 161–63, 165 (Aug. 8, 1985); Deposition of Jalmer Johnson at 112–13 (Aug. 7, 1985), 235–37 (Aug. 13, 1985). The assertions bear no relationship at all to what, in fact, would have happened to Continental, which was not in "average" financial condition, if the contracts had not been rejected.

■ 15. Continental's obligation, under the Railway Labor Act, to maintain the "status quo" *after* the contracts expired is excused by the Bankruptcy Code. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (despite statutory obligation to maintain wages and working conditions provided for in collective bargaining agreement, Chapter 11 debtors may unilaterally lower wages prior to order rejecting the agreement); Memorandum of Authorities Authorizing Rejection of Air Line Pilots Association on Collective Bargaining Agreements (August 17, 1984) at 30–40.

■ 16. An addition to the restriction on damages created by the term of the contract, Section 502(b)(7), 11 U.S.C. § 502(b)(7), further limits damages for breach of "employment contracts" to a maximum of one year's compensation. Collective bargaining agreements are "employment contracts" within the meaning of 11 U.S.C. § 502(b)(7). *In re Cortland Container Corp.*, 30 B.R. 715 (Bankr.N.D.Ohio 1983).

17. ALPA's reliance on the Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137 (1973), to argue that Section 502(b)(7) does not apply to collective bargaining agreements is unpersuasive. In that Report, a *commission* (not the Congress) described a provision similar to what became Section 502(b)(7) as "principally" (not exclusively) intended to apply to long-term management contracts, and to the termination of contracts for future "athletic, entertainment or other services." The language under discussion itself indicates that the commission did not intend the cap provision to apply *only* to such contracts. Moreover, the report in question is *not part of the legislative history of the 1978 Bankruptcy Code at all*, but is a report of a national commission on bankruptcy which concluded its proceedings five years before the 1978 Code was enacted. As enacted, § 502(b)(7) contains no limitation to "management," "entertainment" or "sports" contracts. The legislative history of the 1978 Code reflects only an intention to track a similar provision on leases, which had placed a cap on the damages which might be claimed for the rejection of a lease to prevent unjust enrichment of a lessor. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 352–354 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 62–65 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5848–5851, 6307–6310.

18. No affidavits or other admissible evidence have been offered to establish that

there is a genuine dispute as to material fact. Because this Court is persuaded that Continental is entitled to judgment as a matter of law, summary judgment is appropriate and will be granted. Federal Rules of Civil Procedure 56(e).

19. For the foregoing reasons, ALPA's claim for contract rejection damages will be disallowed in its entirety.

20. This Court further rules that the value of ALPA's claim for contract rejection damages, pursuant to its proof of claim, is estimated, pursuant to 11 U.S.C. § 502(c), to be zero based upon the Court's conclusion that these claims are ultimately without merit.

The Court would note that even if the damages for breach of the collective bargaining agreements were deemed appropriate, ALPA's contract rejection damages claims would be limited to the lesser of one year's compensation or the compensation due under the contracts from September 24, 1983 to the date that the contract was no longer effective by its own terms. Damages would thus be limited to compensation for the period September 24, 1983 to September 24, 1984. These Findings of Fact and Conclusions of Law are hereby incorporated in and made a part of the order attached hereto.