In re N & T ASSOCIATES, INC., a Nevada Corporation, dba Aladdin Hotel & Casino, Debtor.

**Bankruptcy No. BK–S–84–0190.**

United States Bankruptcy Court, D. Nevada.

Sept. 25, 1987.

with respect to priority is intended to be given for administrative claims. . . .")

Peter C. Bernhard, Las Vegas, Nev., for plaintiff.

Timothy S. Cory, Las Vegas, Nev., for defendant.

## MEMORANDUM AND ORDER ESTABLISHING CLAIM

ROBERT CLIVE JONES, Chief Judge.

The Debtor, N & T ASSOCIATES, INC. ("Debtor"), filed a petition under Chapter 11 of the Bankruptcy Code on February 9, 1984. The primary asset of the Debtor is property commonly known as the Aladdin Hotel & Casino. On January 30, 1987 the Culinary Workers Union Local 226 ("Union") filed an application on behalf of William Prentiss, a union member and a former employee of the Debtor, for the allowance and distribution, as an administrative claim, of wages due Prentiss under an arbitration award.

The facts giving rise to Prentiss' claim are not in dispute. On January 5, 1983 Prentiss' employment with the Debtor was terminated for an alleged violation of the collective bargaining agreement between the Debtor and the Union. The Union processed a grievance on Prentiss' behalf and the matter was heard before an arbitrator. The arbitrator issued an award in favor of Prentiss, ordering that Prentiss be reinstated and that he was to receive back pay excluding 31 days from the date of discharge. The Debtor filed a complaint to vacate the award and moved for summary judgment. The Union moved to confirm the award. The matter was stayed when the Debtor filed its bankruptcy petition in February, 1984, but the arbitrator's award was ultimately confirmed by the district court on January 12, 1987. Meanwhile, on January 29, 1986 this Court approved the rejection of the collective bargaining agreement between the Debtor and the Union.

The Union seeks the wages due Prentiss under the arbitrator's award as an administrative expense. Specifically, the Union seeks wages from February 5, 1983 to January 29, 1986, the date the collective bargaining agreement was rejected.[1] The Union is not seeking damages arising out of the rejection of the collective bargaining agreement. The total amount sought is $43,086. The Union argues that Prentiss' claim is entitled to administrative status by virtue of section 503(b)(1)(A) which grants an administrative priority to claims for "wages, salaries or commissions for services rendered after the commencement of the case".

The Debtor argues that since Prentiss did not render any actual services to the estate after the commencement of the case, section 503(b)(1)(A) is inapplicable. The Debtor further argues that section 502(b)(7) limits the amount of damages that Prentiss can recover to one year from the earlier of the date of termination of employment or the date the petition was filed.

1. Although Prentiss was terminated on January 5, 1983, the Union is seeking back pay for Prentiss beginning February 5, 1983. This date, it seems, takes into account the arbitrator's order that 31 days of back pay were to be excluded from the award.

## DISCUSSION

Section 502(b)(7) provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of filing of the petition, and shall allow such claim in such amount, except to the extent that—

....

7. If such claim is the claim of an employee for damages resulting from termination of an employment contract, such claim exceeds—

A. The compensation provided by such contract, without acceleration, for one year following the earlier of—

i. the date of the filing of the petition; or

ii. the date on which the employer directed the employee to terminate, or such employee terminated performance under such contract; plus

B. any unpaid compensation due under such contract, without acceleration, on the earlier of such dates ...

11 U.S.C. section 502(b)(7).

■ The Debtor argues that since Prentiss is seeking damages resulting from the termination of his employment contract, section 502(b)(7) limits his claim to wages for one year following the date of the termination of his employment. The Union argues that section 502(b)(7) is inapplicable because there is no separate "employment contract" establishing Prentiss' relationship with the Debtor, as is contemplated by the section. Instead, Prentiss is seeking to enforce rights granted him under the collective bargaining agreement which is not the equivalent of an employment contract. Therefore, the Union contends, Prentiss' claim is not subject to the limits of section 502(b)(7). The Court is not persuaded by this argument.

The Union relies on *In re Gee & Missler Services, Inc.*, 62 B.R. 841 (Bankr.E.D. Mich.1986) for the proposition that a collective bargaining agreement is not an employment contract within the meaning of section 502(b)(7). In that case the Chapter 11 debtor was seeking to limit a claim for liability resulting from its failure to contribute to a pension fund created by a collective bargaining agreement. The court held that a collective bargaining agreement is not an employment contract for purposes of section 502(b)(7) because employees do not hold jobs solely by reason of a collective bargaining agreement, nor do they lose jobs solely as a result of the rejection of a collective bargaining agreement. 62 B.R. at 844. The court further stated that it is "commonly assumed" that the section was designed "to limit the claims of key executives—employees, who for one reason or another, were able to exact long term contracts calling for substantial renumeration." *Id.* at 844. In so holding, the *Gee* court expressly rejected the cases of *In re Cortland Container Corp.*, 30 B.R. 715 (Bankr.N.D.Ohio 1983) and *In re Continental Airlines Corp.* 64 B.R. 865 (Bankr.S.D.Tex.1986), both of which held that damages arising out of breaches of collective bargaining agreements *are* limited by section 502(b)(7).

In *Cortland*, pursuant to the collective bargaining agreement, the debtor was required to make payments for life and health insurance coverage of its employees. However, upon the filing of the petition, the debtor ceased making such payments. Certain retirees of the debtor filed an application for the allowance of their claims for insurance benefits. The court held that the retirees' claims for insurance benefits were "claim[s] for damages resulting from the termination of an employment contract" and, therefore, within the purview of section 502(b)(8) (now section 502(b)(7)). The court noted that, as a general matter, employees have a contract-based right to sue for a breach of a collective bargaining agreement. *Cortland*, 30 B.R. at 717 n. 1 (citing *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). To hold otherwise, the court stated, "would create an artificial distinction unwarranted by bankruptcy law provisions between employers with union employees

**288**

and employers with non-union employees." 30 B.R. at 717.

Similarly, in *Continental Airlines* the court, citing *Cortland*, held that damages arising out of the rejection of a collective bargaining agreement, pursuant to 11 U.S.C. section 1113, were limited by section 502(b)(7). The court rejected the union's reliance on the Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc. No. 93–137 (1973), which stated that the section was "principally" intended to apply to long-term management contracts.[2] The court pointed out that the report is not part of the legislative history of the Bankruptcy Code. The court further noted that the report's use of the term "principally" indicated that the commission did not intend the cap provision to apply *only* to such contracts.

This Court is persuaded by the reasoning of the *Cortland* and *Continental Airlines* courts that a collective bargaining agreement is an employment contract within the meaning of section 502(b)(7). There does not appear to be any valid reason why Congress would seek to limit the claims of non-union employees, but not those of union employees. Further, a collective bargaining agreement can indeed, as in this instance, establish the terms and conditions of an employment relationship and give rise to a contract-based claim upon breach. Accordingly, Prentiss' claim is limited by section 502(b)(7).

## THE CALCULATION OF DAMAGES

 As noted, Prentiss was discharged on January 5, 1983. Debtor's petition was filed on February 9, 1984. Thus, the earlier date for purposes of the damage calculation is the date of discharge. Accordingly, Prentiss is entitled to one year's wages for the period from January 5, 1983 to January 4, 1984. Since none of the wages accrued post-petition, the Court need not address the issue of whether Prentiss is entitled to an administrative priority for his claim.

2. Apparently, this was the report relied on by the *Gee & Missler* court, although it was not

Section 507(a)(3)(A) of the Bankruptcy Code grants a third priority to allowed unsecured claims for wages and salaries, "earned by an individual within 90 days before the date of the filing of the petition ..." not to exceed $2,000 for each individual. Thus, for those wages accruing between November 9, 1983 (90 days before the filing of the petition) and January 4, 1984 (the last date for which Prentiss is entitled to pay), Prentiss has a section 507(a)(3)(A) priority claim. The balance of Prentiss' claim is non-priority unsecured. Of course, any amount sought by Prentiss is subject to mitigation for any wages actually earned by Prentiss during the period in question.

Prentiss' counsel may submit an order establishing the amount of Prentiss' claim in accordance with this memorandum decision. Either party may request further hearing on the final amount due Prentiss prior to entry of the order.