In re FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Debtors.

Ann BUNN, Marybelle Hoffman, Eva M. Schiele, Appellants,

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Appellees.

BOLAND/PENDER GROUP, Appellant,

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Appellees.

Albert G. MAS, Appellant,

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Appellees.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Appellant,

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Appellees.

Norma SCHRODER, et al., Appellants,

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Appellees.

Nina ANGELO, et al., Appellants,

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., and Frontier Holdings, Inc., Appellees.

No. 86–B–8021–E, Civ. Nos. 89–K–2191, 90–K–106.

United States District Court, D. Colorado.

Feb. 28, 1992.

David P. Callet, Mary Kay Kramer, Akin, Gump, Strauss, et al., Washington, D.C., Faegre & Benson, Denver, Colo., for Frontier Airlines, Inc.

Roger P. Barrick, Denver, Colo., for Angelo Group.

James C. Fattor, Hornbein, MacDonald, et al., Denver, Colo., for Machinists Union.

Marybelle A. Hoffman, pro se.

Ann Bunn, pro se.

Eva M. Schiele, pro se.

Lee Kutner, Jay E. Goldstine, Rubner & Kutner, Denver, Colo., for Schroder Group.

George A. Smith, Englewood, Colo., for Boland–Pender Group.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this consolidated bankruptcy appeal, several groups of former Frontier employees and one employee union [1] challenge the bankruptcy court's July 27, 1989 judgment estimating the value of certain employee claims under 11 U.S.C. § 502(c) (the "Estimation Order"). One employee group, the Angelo Group, also appeals the bankruptcy court's December 8, 1989 order denying its motion to reconsider/clarify the Estimation Order.[2] Another group, the Bunn Group,

---

1. The bankruptcy clerk's office has separately designated the appeals of these parties as follows:

    Bunn Group—Appeal "L"
    Boland/Pender Group—Appeal "M"
    Albert G. Mas—Appeal "N" (dismissed by order dated July 9, 1990)
    International Association of Machinists and Aerospace Workers, AFL–CIO ("IAM")—Appeal "O"

    Schroder Group—Appeal "P"
    Angelo Group—Appeal "Q" (originally filed as 90–K–106 and consolidated with this case on April 11, 1990).

2. The Bunn Group also moved for reconsideration, but does not address this issue in its brief on appeal. Therefore, it is deemed waived. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir.1990).

appeals two bankruptcy court rulings entered on December 8, 1989 denying its motion to segregate claims and denying its motion to reconsider an August 22, 1989 ruling regarding surviving bankruptcy claims.[3] I affirm.

## I. *Facts.*

Frontier commenced bankruptcy proceedings on August 28, 1986. That fall, Frontier and the Texas Air Corporation reached an agreement whereby Texas Air would acquire the assets of Frontier. A prerequisite to this agreement was the execution of the Job Preservation Agreement (JPA) by Frontier, Continental Airlines, Inc. (a Texas Air subsidiary), and four employee unions. Under the JPA, the unions agreed to extinguish their collective bargaining agreements with Frontier, including an October 1985 agreement whereby Frontier had made certain promises to continue operations into 1990, in exchange for certain job and severance benefits. As contemplated in the JPA, approximately ninety percent of the unions' employees also executed waivers of claims against Frontier, except certain defined "surviving bankruptcy claims." At least seventy-five percent of the union employees were required to execute waivers before the JPA could become effective. The JPA was subsequently approved by the bankruptcy court.

Despite having executed waivers of claims, a number of former Frontier employees filed proofs of claim with the bankruptcy court. The events leading to the instant appeals commenced on April 18, 1988, when Frontier filed a motion to estimate and disallow certain labor-related motions (the "Estimation Motion"). In that motion, Frontier requested the bankruptcy court estimate at zero and disallow claims based on (1) lost future wages and benefits in excess of the one-year cap established by 11 U.S.C. § 502(b)(7), (2) lost future pass privileges, (3) accrued but unused sick and occupational injury privileges, (4) severance, furlough and no-notice pay to the extent the claimant also sought lost future wages. Frontier had previously filed a related motion requesting the bankruptcy court to strike the claims of employees who had signed waivers. That motion was still pending at the time the estimation motion was filed.

Numerous parties responded in opposition to the Estimation Motion. A hearing was held over several days in January, March and May, 1989. On July 27, 1989, the bankruptcy court entered the Estimation Order, granting the motion and affording Frontier the relief it had requested. Several parties moved for reconsideration or clarification. These motions were denied on December 8, 1989, leading to the instant appeals.

## II. *Issues.*

### A. *Propriety of § 502(c) Estimation.*

The first issue in this appeal, raised by the Bunn Group, is whether the bankruptcy court erred in employing the estimation provisions of § 502(c) of the Bankruptcy Code in the first instance. The Bunn Group argues that bankruptcy court erred "in ruling that estimation under Section 502(c) is applicable to a solvent bankruptcy when the purpose is to deny legitimate claims of former employees to hasten payment of the large left-over estate to the

---

**3.** Frontier Airlines, Inc., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc. and Frontier Holdings, Inc. (collectively, "Frontier") moved on January 8, 1990 to separate the Bunn Group's appeal, Appeal "L", into three separate appeals, one for each of the three orders appealed from. While the motion is logically sound, it is more efficient to issue an order on all issues. Therefore, I deny the motion to separate appeals.

Frontier has also moved to dismiss the Schroder Group's appeal for failure to timely file a brief. Shortly thereafter, counsel requested leave to file the Group's brief, responded to the motion to dismiss, and has since met all other deadlines. Since Frontier was not prejudiced by this delay, I deny the motion to dismiss. *See Russell v. Weicker Moving & Storage Co. (In re Russell),* 746 F.2d 1419 (10th Cir.1984) (dismissal for failure to timely file a brief a "drastic sanction" to be used in limited circumstances).

equity holder, rather than to creditors (former employees)." (Appellant's [Bunn Group] Opening Br. at 2–3.) The Bunn Group adds that the bankruptcy court was without the power to estimate claims at zero value, because the express language of § 502(c) provides for estimation "for purpose of allowance." *See* 11 U.S.C. § 502(c).[4]

■ Section 502(c) of the Bankruptcy Code states:

> There shall be estimated for purpose of allowance under this section—
>
> > (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
> >
> > (2) any right to payment arising from a right to an equitable remedy for breach of performance.

*Id.* Estimation is not discretionary with the bankruptcy court. Section 502(c) *requires* the court to estimate contingent and unliquidated claims to prevent undue delay in the administration of the case. *See International Bhd. of Teamsters v. IML Freight, Inc.,* 789 F.2d 1460, 1463 (10th Cir.1986) ("[s]ection 502(c) requires that such unliquidated claims must be estimated for allowance if liquidation of the claim would unduly delay the closing of the case"); *In re Towner Petroleum Co.,* 48 B.R. 182, 187 (Bankr.W.D.Okla.1985) (bankruptcy court has affirmative duty to estimate claims, a function essential to its purpose); *In re Curtis,* 40 B.R. 795, 801 n. 7 (Bankr.D.Utah 1984) (same). Here, the bankruptcy court made express findings as to the need for estimation given the vast number of potentially invalid claims and the delay and risk of inconsistency that could result from an individualized liquidation process. (*See* Estimation Order at 2.)

■ Construing the Bunn Group's *pro se* pleadings liberally, it appears the Group argues that the conditions for estimation under § 502(c)(1) were not met because Frontier was, in reality, not illiquid and not in reorganization. Yet, the Bunn Group cites absolutely no evidence of record to dispute the bankruptcy court's finding that the estate was faced with claims totalling in excess of $1 billion yet had assets of only $175 million. (*See* Estimation Order at 1). Furthermore, there is nothing in the statutory language which indicates that the estimation must yield a positive value for the claim. I hold explicitly the phrase "for purpose of allowance" in § 502(c) is reasonably construed to encompass both the allowance and disallowance (through valuation at zero) of contingent or unliquidated claims, as a number of courts have implicitly held. *See, e.g., Ryan v. Loui (In re Corey),* 892 F.2d 829, 834 (9th Cir.1989) (affirming estimation of speculative claim at zero), *cert. denied,* — U.S. —, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990). Thus, the bankruptcy court did not abuse its discretion in engaging in the estimation process under § 502(d). *See id.* (court's § 502(c) estimation reviewed for an abuse of discretion).

**B.** *Application of § 502(b)(7) to Limit Claims for Lost Future Wages and Benefits under Collective Bargaining Agreement.*

The second issue in this appeal, asserted by the Bunn Group and the Angelo Group, is that the court erred in applying § 502(b)(7) of the Code to limit claims arising from the breach of a collective bargaining agreement. Under this section, "a

---

**4.** The Bunn Group also raises several issues not germane to this appeal and/or which have conclusively been determined against it in other actions. For these reasons, I have not addressed the Bunn Group's arguments that (1) it was "muzzled" at the hearing on the Estimation Motion regarding the JPA and waivers, (2) it effectively had no standing because of this, (3) the bankruptcy court erred in rejecting the validity of unverified affidavits in connection with its September 28, 1989 summary judgment ruling on Frontier's motion to disallow waived employee claims, and (4) there have been errors in bookkeeping preventing public access to bankruptcy records.

claim of an employee for damages resulting from the termination of an employment contract" is limited to damages for one year of compensation under the contract, commencing at the earlier of the employee's termination date or the filing of the petition. *See* 11 U.S.C. § 502(b)(7). These parties argue that the 1985 collective bargaining agreement, under which their claims are derived, should not be construed as an employment contract under this section.

As both the Bunn Group and the Angelo Group correctly note, there is a split of authority whether collective bargaining agreements are within the scope of § 502(b)(7). Under one line of authority, courts have held that Congress did not intend § 502(b)(7) to apply to collective bargaining agreements. *See, e.g., United Steelworkers of Am. v. Cortland Container Corp.*, 105 B.R. 375 (N.D.Ohio 1989); *U.S. Truck Co. v. Teamsters Nat'l Freight Indus. Negotiating Comm. (In re U.S. Truck Co.)*, 89 B.R. 618 (E.D.Mich.1988); *In re Gee & Missler Servs., Inc.*, 62 B.R. 841 (Bankr.E.D.Mich.1986). Other courts, focusing on whether the agreement "establish[es] the terms and conditions of an employment relationship," have held that collective bargaining agreements can be considered employment contracts under § 502(b)(7), disagreeing that the section's legislative history mandates otherwise. *In re N & T Assocs., Inc.*, 78 B.R. 285 (Bankr. D.Nev.1987); *see also In re Wheeling–Pittsburgh Steel Corp.*, 113 B.R. 187 (Bankr.W.D.Pa.1990); *In re Continental Airlines Corp.*, 64 B.R. 865, 873 (Bankr. S.D.Tex.1986).

In this case, the exercise is, for the most part, academic. The appellants rely, at least in part, on the breach of the 1985 collective bargaining agreement to establish their claims for lost wages and benefits. Yet, it is undisputed that this agreement was *voluntarily* abrogated by the signatory unions when they ratified the JPA and individual employees executed waivers of claims. (*See* Estimation Order at 5 n. 2.) The validity of the JPA and the waivers have been upheld. *See Haggart Group v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.)*, 137 B.R. 808 (D.Colo.1992); *Bunn v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.)*, 117 B.R. 585 (D.Colo.1990), *aff'd*, 951 F.2d 1259 (10th Cir.1991). Thus, the 1985 agreement cannot provide the basis for the former employees' claims for lost future benefits.

Even assuming, as the bankruptcy court did, that there could be other sources for the appellants' belief that their employment was guaranteed, the court further found that

> [t]he present record is entirely devoid of any evidence on the part of any of the employee claimants of the existence of any formal employment agreements. A certain amount of time has been spent by some of the claimants arguing the rhetoric that collective bargaining agreements are not employment contracts. See, *Matter of Gee & Missler Services, Inc.*, 62 B.R. 841 (Bankr.E.D.Mich.1986). Such arguments miss the point, however. It is clear from evidence at the hearing that none of said agreements constituted a guaranty of future employment (with the possible exception of the no-furlough provisions of the October 1985 agreement). Thus, since the collective bargaining agreements did not inherently guarantee future employment, the termination of employment did not constitute a breach of the collective bargaining agreements giving rise to a claim for lost future benefits. Conversely, if the collective bargaining agreements did purport to guarantee future employment (such as the no-furlough provisions of the 1985 agreement), then the claims for the wrongful termination of employment under those agreements would be capped by the claim limitation provisions of 11 U.S.C. § 502(b)(7).

Estimation Order at 6. On appeal, the Bunn Group and the Angelo Group make no argument that this finding was clearly erroneous by pointing to evidence of record that Frontier had guaranteed their employment via other agreements. For this reason, there is no basis to reverse the bank-

ruptcy court's findings on this issue. The court's estimation of claims of lost future wages and benefits in excess of one year's compensation at zero was therefore not in error.

C. *Estimation and Disallowance of Claims for Pass Privileges.*

■ The third issue in this appeal, raised by the Bunn Group, the Boland Pender Group, the IAM, and the Schroder Group,[5] is that the bankruptcy court erred in valuing employee claims for lost pass privileges at zero. As the bankruptcy court acknowledged, "[i]t is safe to say that the loss of pass privileges may be the single most emotionally disturbing aspect of Frontier's bankruptcy." (Estimation Order at 9). This is also the most difficult issue raised in this appeal.

In the Estimation Order, the bankruptcy court effectively denied these claims, holding that there was no evidence that these privileges were contractually guaranteed because the employee manual, to which all passholders were subject, permitted Frontier to change the conditions for passes unilaterally at any time. (*See id.*) The court further rejected the argument that Frontier had an implied obligation to continue to operate its routes, analogizing to several cases dealing with "output" and "requirements" contracts where cessation of business did not constitute a breach. (*See id* at 10–16.) Finally, the court held that the passes were not an "employee welfare benefit plan" under ERISA, *see* 29 U.S.C. § 1002(1), so as to prohibit a unilateral reduction in benefits by an employer. (*See id.* at 16 n. 3.)

On appeal, the IAM argues that its retirees' right to passes was a negotiated right embodied in collective bargaining agreements for many years, including one in effect at the time of Frontier's bankruptcy, and that the retirees paid for this right with years of loyal service to Frontier. It

disagrees with the court's finding that there has been no breach because the pass privileges still exist, but there are simply no more flights available. It asserts that union retirees were nevertheless deprived of the significant value of their passes. Similarly, members of the Schroder Group and the Boland/Pender Group contend that they specifically negotiated the right to passes as part of an "Early Out" retirement program offered by Frontier, and that Frontier could not abrogate this agreement under ERISA or traditional contract principles. The Bunn Group adopts by reference the argument of the Boland/Pender Group and argues that its right to pass privileges was guaranteed through the 1985 collective bargaining agreement, which provided that Frontier would continue operations until 1990.

■ Taking these arguments in reverse order, first, it is clear that the Bunn Group's contention that the 1985 collective bargaining agreement provides the basis for Frontier's obligation to continue operations (and thus, pass privileges) cannot stand. As previously noted, this agreement was abrogated by the unions' adoption of the JPA. Second, as noted in Frontier's supplemental brief, there is recent authority to suggest that an employer does not violate ERISA provisions relating to an "employee welfare benefit plan" when benefits are altered or denied according to a plan provision expressly permitting such changes. *See, e.g., Hamilton v. Air Jamaica, Ltd.,* 945 F.2d 74, 77–78 (3d Cir. 1991) (employer has right to decrease severance benefits based on language in employee handbook permitting unilateral change in policy), *petition for cert. filed,* No. 91–1237 (Jan. 28, 1992); *Alday v. Container Corp. of Am.,* 906 F.2d 660 (11th Cir.1990) (plan provision permitting unilateral suspension or modification upheld), *cert. denied,* —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Thus, even if pass

---

**5.** Although the Angelo Group listed this as an issue in its brief, it failed to provide any argument on the subject.

privileges were governed by ERISA,[6] Frontier would not have violated that statute by altering or eliminating its flights.

This conclusion likewise applies to the argument that, regardless of ERISA's application, Frontier breached its contractual obligations to IAM retirees and early-out retirees. Although IAM retirees had specifically negotiated for pass privileges and early-out retirees had accepted the passes as part of an express severance package, the appellants have not disputed the bankruptcy court's finding that all pass privileges, whether held by retirees, early-outs, or regular employees, were subject to the terms of Frontier's Company Policy and Procedures Manual. (*See* R.Supp. Vol. I, Debtor's Ex. 10 at 5.) Under that manual, Frontier could change without notice any and all of the regulations governing pass privileges. (*Id.* at 1.) In addition, the manual specifically states that "[i]t is a privilege to receive free or reduced rate transportation on Frontier or other airlines," (*id.* at 12), and the IAM expressly recognized this fact in a letter to its members. (*See* R.Supp. Vol. I, Debtor's Ex. 16). The bankruptcy court also found and the parties appear to concede that Frontier could unilaterally alter its route structure by adding or deleting cities serviced, decrease the frequency of flights to particular destinations, or reduce its operations to a *de minimis* level. Further, it could completely terminate agreements for inter-line transportation with other airlines who recognized Frontier passes.

Given the flexibility and discretion to which Frontier was entitled under the manual, the bankruptcy court correctly concluded that Frontier did not breach any express or implied agreements relating to pass priv-

ileges. While the IAM retirees and other early-outs may have negotiated the right to positive space or space available passes for their lifetime, they received the right to the continued employee benefit of free travel on Frontier though they were no longer working for the company. This employee benefit was subject to change without notice and, conceivably, total elimination. Accordingly, the court's disallowance of the claims for lost pass privileges was not in error.

D. *Estimation and Disallowance of Claims for Unused Sick and Occupational Injury Leave.*

The fourth issue in this appeal concerns the bankruptcy court's finding that former employees could not assert claims for accrued sick leave and occupational injury leave. The bankruptcy court held that the former employees could not assert claims on this basis because they were not entitled to monetary payment for such leave. It based this finding on undisputed evidence that Frontier's employees were not entitled to "cash out" their leave upon terminating employment; such leave could be used only in the event of actual sickness or occupational injury. (*See* Estimation Order at 17–18.) The Bunn Group and the Angelo Group assert that this conclusion is in error because such leave should be considered "bank time." Under the JPA, claims for "bank time" are surviving claims compensable by the estate and are not subject to the waivers of claims executed by former employees.[7]

Despite the appellants' assertions, there is sufficient evidence in the record to support the bankruptcy court's conclusion that the term "bank time" was not intended to

---

**6.** Frontier cites one case and a Department of Labor Advisory Opinion which have held that pass privileges are not an employee welfare benefit plan. *See Johnson v. Trans World Airlines, Inc.,* 149 Cal.App.3d 518, 524 n. 3, 196 Cal.Rptr. 896 (1983); Dept. of Labor Advisory Opinion No. 281–39A (April 6, 1981). Under Department of Labor regulations, however, only the parties who requested the opinion may rely on it. ERISA Proc. 76–1 § 10, 41 Fed.Reg. 36281 (1976).

**7.** The Bunn Group also asserts that, under *In re U.S. Truck Co.,* 74 B.R. 515 (Bankr.E.D.Mich. 1987), *aff'd,* 89 B.R. 618 (E.D.Mich.1988), employees were entitled to compensation for unused sick and occupational injury leave. That case is distinguishable. There, the collective bargaining agreement specifically provided for cash payment for unused sick leave. *See id.* at 524. There is no comparable provision in any document of record in this case.

encompass accrued but unused sick and occupational injury leave. The court relied on language in the collective bargaining agreement of the Association of Flight Attendants (AFA) (*see* R.Supp. Vol. I, Debtor's Ex. 1 at 31), and in Frontier's policy manual that such leave was automatically canceled upon termination of employment, and that the company had consistently applied this policy. In addition, the court cited the testimony of several witnesses who had participated in the negotiations leading to the JPA who stated the reference to "bank time" was based on the definition of that term contained in the collective bargaining agreement for the Airline Pilots Association (ALPA). Under that agreement, "bank time" means flight time in excess of maximum monthly hours that pilots are permitted to carry forward into the next month. (*See* Estimation Order at 18–19.) Although the Angelo Group cites to testimony from other witness indicating that "bank time" was commonly used to refer to sick leave, the testimony of those involved in the negotiations of the JPA was more persuasive to the trier of fact. Accordingly, I affirm the bankruptcy court's estimation of claims for accrued but unused sick and occupational injury leave at zero.

### E. *Estimation and Disallowance of Overlapping Claims.*

The fifth issue in this appeal, raised by the Angelo Group, is that the bankruptcy court erred in holding that employees who had filed claims for lost future wages and benefits could not also file claims for severance pay, furlough pay and no-notice pay. These claims have been termed by the parties as "overlapping claims." The court disallowed such claims with the reservation that "if any of these employees' claims for lost future wages and benefits are liquidated at less than the furlough or severance pay alleged to be applicable, then the claimant may reassert his or her furlough pay claims." (Estimation Order at 20.) The court further reasoned that, "[o]n this basis an employee will ultimately be allowed the maximum claim whether it is for furlough or severance pay, or for unpaid future compensation." (*Id.*)

■ Although the Angelo Group lists this issue in their opening brief, I can find no argument relating to the estimation of these claims in either their opening or reply briefs. Therefore, I deem it waived. *See Abercrombie v. City of Catoosa,* 896 F.2d at 1231. In addition, since the bankruptcy court's ruling makes logical sense, in that a former employee should not be entitled to compensation for both lost future wages and severance benefits, I affirm the court's ruling on this basis as well.

### F. *Denial of Motion to Reconsider.*

The final issue relating to the Estimation Order concerns the bankruptcy court's denial of the Angelo Group's motion for reconsideration, captioned as motion for clarification. The Angelo Group primarily contended in oral argument on the motion that there was insufficient evidence to support the bankruptcy court's interpretation of the term "bank time." Yet it conceded that, given the testimony of record, there was at least some basis for the court's ruling on the issue. (Tr. Dec. 8, 1989, at 33). Thus, the standards for reconsideration are not met.

■ In addition, in its December 8, 1989 ruling denying the motion, the bankruptcy court noted that all parties had been given ample opportunity to introduce evidence in support of their positions. The record fully supports this finding. The Angelo Group did not demonstrate that the additional evidence it sought to introduce on reconsideration going to the issue of "bank time" was newly discovered evidence under the standards of Fed.R.Civ.P. 60(b). Therefore, the court did not abuse its discretion in refusing to grant reconsideration on this basis. *See White v. American Airlines, Inc.,* 915 F.2d 1414, 1425 (10th Cir.1990) (lower court's ruling on Rule 60(b) motion reviewed for an abuse of discretion).

### G. *Denial of Bunn Group's Motion to Segregate and Motion to Reconsider Order Regarding Surviving Claims.*

In addition to appealing the Estimation Order, the Bunn Group challenges two rul-

ings entered by the Bankruptcy Court on December 8, 1989. First, the Bunn Group contends that the court erroneously denied its motion to segregate the full amount of its claims until the allowable amounts of the claims were conclusively determined. In essence, the Bunn Group seeks a stay of distributions under the plan until its appeal regarding the approval of the JPA has been fully litigated. It argues:

> In the event this court were to approve the motion to estimate, before the Motion to Set Aside the JPA is decided, the disputed monies to settle 89K387 would be gone according to the Plan. In the interests of equity, the monies of these appellants should be segregated until the appeal of the JPA has reached the highest court or is granted, whichever comes first.

(*See* Appellant's [Bunn Group] Opening Br. at 29–30.)

Unfortunately for the Bunn Group, their appeal in 89–K–387 has been decided unfavorably in the district court and in the court of appeals. *See Bunn v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.),* 117 B.R. 585 (D.Colo.1990), *aff'd,* 951 F.2d 1259 (10th Cir.1991) (upholding the validity of the JPA). Therefore, this issue is moot. Regardless, the bankruptcy court did not abuse its discretion in refusing to segregate funds to pay the Bunn Group's facially meritless claims.

Second, the Bunn Group seems to contend that the bankruptcy court erred in denying its motion to reconsider an August 22, 1989 order. (There is no express reference to this ruling in its brief.) In that order, the bankruptcy court disallowed a portion of the surviving claims of parties who failed to respond to creditor details of the amounts of each claim. Construing their arguments liberally, it appears that the Bunn Group misunderstood the effect of the August 22 order. (*See* Appellee's Opening Br. at 70–71.) At the hearing on the Bunn Group's motion for reconsideration, the bankruptcy court explained that the Bunn Group's claims were not affected by the order, since it concerned only surviving bankruptcy claims, and it advised Ms. Bunn that her other claims were preserved. Since the Bunn Group has not demonstrated that it was prejudiced by the August 22 order or the order was otherwise in error, I affirm the bankruptcy court's ruling denying the Bunn Group's motion for reconsideration.

Accordingly, IT IS ORDERED that Frontier's motion to separate Appeal "L" into three separate appeals is DENIED, and

IT IS FURTHER ORDERED that Frontier's motion to dismiss the appeal of the Schroder Group is DENIED, and

IT IS FURTHER ORDERED that for the reasons stated, the several rulings of the bankruptcy court are AFFIRMED.