In re Howard T. LANE, Sr., Debtor.

**Bankruptcy No. 82–00412.**

United States Bankruptcy Court,
D. Hawaii.

Dec. 16, 1986.

Cuyler Shaw, Honolulu, Hawaii, for debtor.

Gary V. Dubin, Honolulu, Hawaii, for respondents.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO ESTIMATE CLAIM**

JON J. CHINEN, Bankruptcy Judge.

On October 8, 1986, debtor filed a Motion to Estimate Claim. A Written Notice of Objections to Motion to Estimate Claim was filed by Creditors Leon Richardson, Margie Richardson, and Copthorne N.V. ("Richardsons") on October 23, 1986. Bettie Lane filed a memorandum in support of the motion on October 24, 1986.

A hearing was held on October 28, 1986 before the undersigned judge, at which time the court took the matter under advisement. A supplemental memorandum in opposition to the motion was filed November 14, 1986 by Waterfront Properties, Inc. and Willis Sinsabaugh ("Waterfront").

The court, being advised in the premises, having reviewed the files and exhibits submitted, and considered the arguments of counsel, now renders this memorandum decision and order.

A brief history of the events leading up to this motion will be helpful:

The Debtor sold the property located at 10 Poipu Place, Honolulu, Hawaii to the Richardsons by way of an Agreement of Sale on June 30, 1981 for $1,350,000.00. The Richardsons made a down payment of $500,000.00 and were required to pay monthly interest payments at at 15¾%. The balance of $850,000.00 was due on January 13, 1983. Waterfront was debtor's real estate agent, and Sinsabaugh was the principal agent involved.

On March 29, 1982, the Richardsons filed a suit in state court claiming misrepresentations by the debtor regarding the condition of the premises and, claiming that the premises were defective when they purchased the property. Waterfront and Sinsabaugh are also named as defendants in that suit, claiming that they knew or should have known of the misrepresentations and defects in the property.

Debtor counterclaimed and sought an order terminating the Richardsons' interest and revesting title in the debtor.

The Richardsons hired an architect, Jack Lipman, who estimated that the repairs would cost $180,960.00. His estimate was based, in part, on cost estimate prepared by Hidano Construction.

On January 24, 1985, the state court dismissed the Richardsons' complaint based on lack of prosecution and ordered that the debtor was entitled to remain in possession.

After a hearing, the bankruptcy court authorized repairs to the premises. The cost of the repairs was $159,023.95, consisting of:

| | |
|---|---|
| Repairs | $127,158.68 |
| Fees to Vernon (supervising architect) | 18,489.00 |
| Survey | 820.00 |
| Termite treatment | 2,559.27 |
| Miscellaneous | 10,000.00 |

The objections of the Richardsons can be briefly summarized as follows:

1. The motion is procedurally defective since it omits the related claim of Copthorne N.V.

2. Debtor has mischaracterized the claim as one solely for the cost of repair. Instead, the claim is one for personal injury, attorneys fees, monthly payments, damages and punitive damages which exceed $5,000,000.00.

3. The judgment in favor of the debtor was not obtained on the merits of the case. Richardsons assert that Judge Edwin Sasaki granted the debtor's request for an order prohibiting the Richardson's from using their expert witnesses, and, thus, Richardsons' attorney refused to proceed with the case. They claim that debtor's attorney intentionally misled Judge Sasaki.

4. The state court judgment is on appeal and the Hawaii Intermediate Court of Appeals may rule within 12 weeks and, even if the judgment is upheld, it is not res judicata in this court.

5. Debtor waived his rights to have the claim estimated because the court ruled that the debtor assumed the agreement of sale, since the debtor has approved the stipulation to lift the stay and since this court has ruled that the proceeds of the Poipu property is a fund which is subject to Richardsons' claim.

6. In the alternative, the full resolution of their claim will not unduly delay the administration of the case because they have a secured claim, and the case has progressed little in the past. They want the court to keep the money in the bank until the outcome of the state court litigation.

7. This is a personal injury tort claim and therefore the bankruptcy court should abstain.

8. Their constitutional rights are being violated because they are entitled to a jury trial.

9. They are entitled to more time to prepare, rather than the three (3) weeks notice they had of the hearing.

Waterfront's objections can be briefly summarized as follows:

1. This court should defer this motion until the appeal in the state court is completed and the extent of liability is determined.

2. Waterfront may be prejudiced if a decision finding joint liability is entered in state court. Further, it would be prejudicial to Waterfront if it were required to argue for a larger estimate in this bankruptcy matter since such argument may be viewed as an admission by the state court.

3. Waterfront will allow the funds necessary to pay administrative costs to be released from escrow. The only major recurring administrative expense is debtor's attorney fees, which would be minimal if this motion and confirmation of plan is deferred.

4. Debtor's assets are not wasting or depreciating in value, and even if a plan were confirmed, it would have to be delayed until the sale of the Sunkist property closes.

For the following reasons, the court finds the Richardsons' and Waterfront's objection to be utterly void of any merit whatsoever.

The essence of 11 U.S.C. Section 502(c) is that "all claims against the debtor be converted into dollar amounts". H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977) S.R. Rep. No. 989, 95th Cong., 2d Sess. 65 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5851, 6309. In particular, 11 U.S.C. 502(c)(1) states:

(c) There *shall* be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, *would unduly delay the administration of the case;* (emphasis added)

This duty of the bankruptcy court is mandatory, since the language of the above-quoted section states "shall".

■ Thus, the decision on appeal is irrelevant. What is relevant to the instant case is how long it will take before the Richardsons' claim will be liquidated and determined by the state court. The bankruptcy court is empowered to estimate claims if the liquidation would unduly delay the administration of the case. Richardsons and Waterfront claim that a decision on appeal is imminent, *i.e.* within the next five (5) months. What they fail to consider, however, is the additional time necessary to liquidate their claim should they succeed on appeal. The matter would then be remanded for trial on the merits. There is no indication of how long it would take the state trial court to resolve the matter, or the inevitable appeals that would follow, no matter who succeeded at the trial court.

Even if the default judgment was sustained on appeal, there is a likelihood of appeal to the Hawaii Supreme Court. This court concludes that deferral pending resolution of the matter would unduly delay the administration of this case.

It is true that this case has been pending since 1982, with no plan of reorganization having been confirmed; that is, however, no reason to further delay the administration of the case. No plan of reorganization can be confirmed so long as this claim remains unliquidated and not estimated. *See e.g. In re Pizza of Hawaii, Inc.,* 40

B.R. 1014 (D.Hawaii 1984); *In re McCall,* 44 B.R. 242 (Bkrtcy.E.D.Pa.1984); *In re Planes, Inc.,* 48 B.R. 698 (Bkrtcy.N.D.Ga. 1985).

Nor does the fact that debtor assumed the agreement of sale, stipulated to the lifting of the stay to allow the state court action to proceed, or the fact that the court ruled that the proceeds of the Poipu property are subject to the Richardsons' claim relieve this court of its duty to estimate the claim. *See In re Nova Real Estate Investment Trust,* 23 B.R. 62, 65 (Bkrtcy.E.D.Va. 1982), where the court states:

This language [11 U.S.C. § 502(c)] is mandatory, not permissive, and creates in the Court an affirmative duty under proper circumstances to estimate any unliquidated claim....

The legislative history of Section 502(c) supports this interpretation and makes it clear that Congress, in drafting Section 502(c), intended that the Court should estimate any claim, actual liquidation of which would unduly delay closing of the estate. The Senate and House reports on this subsection contain identical language as follows:

Subsection (c) requires the estimation of any claim liquidation of which would unduly delay the closing of the estate, such as a contingent claim, or any claim for which applicable law provides only an equitable remedy, such as specific performance. This subsection requires that all claims against the debtor be converted into dollar amounts.

House Report No. 95–595, 95th Cong., 1st Sess. 354 (1977); Senate Report No. 95–989, 95th Cong., 2nd Sess. 65 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5851, 6310.

Finally, it should be noted that this motion concerns estimating the claim of the Richardsons only. If Copthorne, N.V. has a valid claim against the estate, that is properly the subject of another motion to estimate claim, and is not before this court at this time. Waterfront has filed an Application to Allow Late Filing of Claim,

currently scheduled for hearing on December 11, 1986. Pending the outcome of that hearing, Waterfront's claim is also not before this court.

■ The matter remains as to the estimated amount of the claim of the Richardsons. The Richardsons claim that they are entitled to a jury trial, and that they are entitled to one in this estimation. That is not the case. Congress, in enacting 11 U.S.C. § 502(c) clearly gave the bankruptcy court the power and tahe duty to estimate claims. As stated in *Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134, 135–36 (3d Cir.1982):

> The Code, the Rules of Bankruptcy Procedure, 11 U.S.C. app. (1977), and the Suggested Interim Bankruptcy Rules, 11 U.S.C.A. (1982), are silent as to the manner in which contingent or unliquidated claims are to be estimated. Despite the lack of express direction on the matter, we are persuaded that Congress intended the procedure to be *undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue. The principal consideration must be an accommodation to the underlying purposes of the Code. It is conceivable that in rare and unusual cases arbitration or even a jury trial on all or some of the issues may be necessary* to obtain a reasonably accurate evaluation of the claims. *See 3 Collier on Bankruptcy* ¶ 502.03 (15th ed.1981). *Such methods, however, usually will run counter to the efficient administration of the bankrupt's estate and where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value.* In so doing, the court is bound by the legal rules which may govern the ultimate value of the claim. For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law. *See Collier on Bankruptcy* ¶ 57.15[3.2] (14th ed.1977). However, *there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code.*

> In reviewing the method by which a bankruptcy court has ascertained the value of claim under section 502(c)(1), an appellate court may only reverse if the bankruptcy court has abused its discretion. That standard of review is narrow. The appellate court must defer to the congressional intent to accord wide latitude to the decisions of the tribunal in question. Section 502(c)(1) of the Code embodies Congress' determination that the *bankruptcy courts are better equipped to evaluate the evidence supporting a particular claim with the context of a particular bankruptcy proceeding.* Thus, an appellate court can impose its own judgment only when "the factors considered [by the bankruptcy court] do not accord with those required by the policy underlying the substantive right or if the weight given to those factors is not consistent with that necessary to effectuate that policy...." *Gurmankin v. Costanzo,* 626 F.2d 1115, 1119–20 (3d Cir.1980). (emphasis added) (footnotes omitted)

This court concludes that this is not one of those "rare and unusual cases" that would warrant a jury trial on the amount of the estimated claim. The essence of the claim is in reality a breach of contract. Although claims of personal injury and emotional distress are tossed in, the court views that there is a very low likelihood that any of these claims would be accepted by the state court.

■ The question is how do we estimate the claim. As stated in *In re Nova Real Estate Investment Trust,* 23 B.R. 62, 66 (Bkrtcy.E.D.Va.1982):

> In estimating claims under the old Act, bankruptcy courts were directed to use a "generous and liberal" standard, yet give "due regard ... to the rights of other creditors." *In re William Rakestraw Co., Inc.,* 450 F.2d 6 (9th Cir.1971). At least one authority indicates that the esti-

mate should be reasonable, and not arbitrary. 3 Collier on Bankruptcy, ¶ 57.-15[3.3], p. 264 (1977). Regardless of whether a court applies a "generous and liberal" standard or a "reasonable" one, the result can only be an estimate. An *estimate necessarily implies no certainty; it is not a finding or a fixing of an exact amount.* It is merely the court's best estimate for the purpose of permitting the case to go forward and thus not unduly delay the matter. (emphasis added)

First, the court notes that a default judgment has already been entered in the state court action. The Richardsons claim that reversal is virtually guaranteed; however, the default judgment was entered on January 23, 1985, and to date, nearly two (2) years later, no reversal has been obtained.

Richardsons claim that they are entitled to at least $5,000,000.00 in the state court action, which includes $500,000.00 down payment, $120,000.00 in monthly payments, lost benefit of $500,000.00, damages of $3,000,000.00 and punitive damages which could easily reach $15,000,000.00.

The court has reviewed the numerous pleadings and briefs of the debtor and of the Richardsons in this matter. After a close examination of the underlying facts and circumstances, the court concludes that there is a very minimal likelihood that the Richardsons, even if successful on appeal, could persuade a jury that it was entitled to the general damages and punitive damages prayed for.

Debtor argues that $80,000.00 is sufficient to cover the claim, since the cost of repairs was $159,023.95 and some of the repairs were caused by Richardsons' failure to upkeep the premises. Bettie Lane agrees, but also states that it could be $120,000.00 if considered on the merits of the case. Thus, they argue that the present value of the claim is $80,000.00 to $120,000.00 depending on whether one considers the default judgment.

This court concludes that neither of these amounts should be used. Because of the existence of the default judgment, and be-cause the court feels that any award of the benefit of the bargain damages of $500,-000.00 is very unlikely, the court concludes that this claim should be estimated at $550,000.00, which includes the down payment and the monthly payments.

It should be noted here that this amount is not binding on the state court, nor is it even evidence of the amount of the indebtedness. It is merely the best estimate that this court can give on the present value of the likelihood of outcomes possible in this matter.

If the Richardsons obtain judgment in excess of the amount provided for, they may move this court to reconsider the claim for "cause", "according to the equities of this case" pursuant to 11 U.S.C. Section 502(j). They may do so as long as the case has not been closed. The Richardsons are free to do so should the Hawaii litigation turn out more favorable than this court has estimated.

IT IS HEREBY ORDERED that the Motion to Estimate Claim filed on October 8, 1986 is granted.

IT IS FURTHER ORDERED that the claim be estimated at $550,000.00.