In re APEX OIL COMPANY, et al., Debtors.

APEX OIL COMPANY, Debtor,

v.

STINNES INTEROIL, INC., Coastal Refining & Marketing, Inc., The Belcher Company of New York, Inc., and New York Mercantile Exchange, Claimants.

Bankruptcy No. 87–03804–BKC–BSS. Claim Nos. 835, 936, 937 and 985. Claim Objection Nos. 1244, 1245, 1246 and 1247.

United States Bankruptcy Court, E.D. Missouri, E.D.

Oct. 30, 1989.

Richard S. Berger, Gendel, Raskoff, Shapiro & Quittner, Clayton, Mo., Richard S. Berger, Carol Levine, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., Dennis A. Ferrazzano, Barack, Ferrazzano and Kirschbaum, Chicago, Ill., for debtors.

Lloyd A. Palans, Gallop, Johnson and Neuman, St. Louis, Mo., Examiner.

Steven N. Cousins, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, Mo., for Unsecured Creditors Committee.

Robert J. Brownlee, Thompson & Mitchell, St. Louis, Mo.

Donald E. Egan, Lee Ann Watson, David K. Schmidt, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for Stinnes Interoil, Inc.

Christopher H. Lunding, Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York City.

Michael Lesch, Shea & Gould, New York City, for Belcher Co. et al.

Audrey G. Fleissig, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo.

Larry Wainer, Houston, Tex.

R. Patrick Thompson, Executive Vice President, New York Mercantile Exchange, Norman S. London, St. Louis, Mo.

William E. Hegarty, Cahill Gordon & Reindel, New York City, for New York Mercantile Exchange.

Norman S. London, Deborah Chait Korenblat, St. Louis, Mo.

### MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

On September 25, 1989, Apex Oil Company (hereinafter "Apex") filed a Motion To

Estimate Claims (hereinafter the "Motion"), pursuant to § 502(c)(1) of the Bankruptcy Code. The Motion concerns the claims of Stinnes Interoil, Inc. (hereinafter "Stinnes"), Coastal Refining and Marketing, Inc. (hereinafter "Coastal"), The Belcher Company of New York, Inc. (hereinafter "Belcher"), and New York Mercantile Exchange (hereinafter "the Exchange" and collectively, the "Claimants" or "Defendants"), which are currently pending in the United States District Court for the Southern District of New York. *Apex Oil Company v. DiMauro*, Case No. 82 Civ. 1796. Each of the four creditors in this case has consented to a consolidated hearing of Apex's Motion To Estimate Claims.

## JURISDICTION

This Court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B).

## FACTS

### I. Underlying Litigation

In 1982 Apex, as Plaintiff, commenced a civil action against Stinnes, Coastal, Belcher, and the Exchange, charging each company with antitrust violations, commodities manipulations, and common law fraud. Stinnes, Coastal, and Belcher filed substantially identical counterclaims. The Exchange filed counterclaims alleging common law fraud and market manipulation. Both the Apex claims and the counterclaims against it arose from substantially the same events and transactions.

Following several years of exhaustive discovery, each of the Defendants moved for summary judgment. The United States District Court for the Southern District of New York granted the Defendants' motions, thus dismissing all Apex's claims. 641 F.Supp. 1246 (S.D.N.Y.1986). Apex appealed to the United States Court of Appeals for the Second Circuit, which re-versed the dismissal of Apex's antitrust claims and a portion of their commodities market manipulation claims against Belcher. The Court affirmed the remainder of the decision. 822 F.2d 246, 261 (2d.Cir.1987). Petitions to the United States Supreme Court for certiorari were denied. 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

On December 24, 1987, Apex and fifty-one of its subsidiaries filed in this District voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. At a February 29, 1988 pretrial conference in the *DiMauro* action, Apex informed United States District Judge John M. Walker, Jr. of the filing of the bankruptcy cases. The automatic stay provisions of § 362(a) of the Bankruptcy Code precluded prosecution of the Defendants' counterclaims. During the course of the pretrial conference, Judge Walker made the following comments which bear upon the disposition of this motion:

(a) Apex's claims and the counterclaims of Belcher (and other parties) are "inextricably intertwined";

(b) The counterclaims filed by Belcher (and the other defendants) were compulsory counterclaims;

(c) There would be an overlap of trial witnesses and trial exhibits which buttressed the propriety of a single trial of all claims and counterclaims;

(d) It would be a "wasteful process" for Apex to refuse to consent to, and thereby, to necessitate the filing of motions for, relief from the automatic stay;

Lesch Aff. para. 8 at 4–5.

On March 4, 1988, the four Defendants filed in this Court motions for relief from the automatic stay, which would have enabled each to prosecute their counterclaims in the District Court. In a March 24, 1988 Order, this Court modified the automatic stay to permit the Defendants to file and argue potentially dispositive motions relating to the *Apex Oil Company v. DiMauro* action. Thereafter, Apex, Coastal and Belcher each moved for summary judgment on their respective claims and counterclaims. In its April 17, 1989 opinion the

District Court partially granted each side's motions. 713 F.Supp. 587 (S.D.N.Y.1989). On September 27, 1989, the District Court denied both sides motions for reargument, or in the alternative, for permission to take an interlocutory appeal to the Second Circuit. The order also directed the *DiMauro* parties to submit their joint pretrial orders no later than November 30, 1989.

On October 17, 1989 this Court entered an Order to Show Cause why the Apex estates should not be converted from proceedings under Chapter 11 to a proceeding under Chapter 7 liquidation. In so doing, this Court granted Apex until October 30, 1989 to file its plan of reorganization for creditor confirmation. Apex has filed its Plan and Disclosure Statement on this date.

## II. The October 23, 1989 Hearing

On October 23, 1989, the parties met with Judge Walker in New York. During that hearing Judge Walker made several observations which are helpful in reaching a final and equitable disposition of this Motion. First, Judge Walker, reaffirming his view that all parties' claims and counterclaims should be heard in one action, stated:

It seems to me that the sole issue that we are faced with is the effect of my most recent order directing a filing of a pretrial order in this case by November 30 in the light of the automatic stay. Obviously, we have a little tension between the Bankruptcy Court and this Court on this point, but the fact of the matter is that this is a case that should be disposed of. Plaintiff has brought a lawsuit. After its tortuous path between this court and the Court of Appeals and now back to this court and after hearing subsequent motions, the plaintiff's claims have to be tried. And there are counterclaims that have to be tried. *I adhere to my original view that to have a proceeding that does not dispose of all of the claims at one time would be a tremendous waste of judicial resources.*

Therefore, in the light of that, *it seems to me that every effort should be made to get the stay lifted so that the counterclaims can proceed.*

*DiMauro* Hearing, October 23, 1989 at 2–3. (emphasis added).

Second, Judge Walker indicated that he would make every effort to promptly schedule a trial for disposition of all claims, should this Court choose to lift the automatic stay. In fact, the Judge stated that he would be able to schedule a trial date on January 8, 1990. Until that time, he encouraged the use of varied techniques aimed at settling this case. Finally, Judge Walker, who is currently under consideration for appointment to the Second Circuit, stated that he certainly would be willing to consider the possibility of continuing to hear the *DiMauro* case, even if he were to vacate his current District Court position.

## III. The Motion To Estimate

On October 26, 1989 this Court heard Apex's Motion To Estimate Claims. From this hearing came two points which strongly bear upon the disposition of this motion. First, the Claimants represented that should a trial occur in the Southern District of New York in January, the District Court's damage determination would serve as a cap for any claim the defendants may assert against the Apex estate. All Defendants further represented that the District Court's damage determination would be binding for purposes of plan voting and distribution. Second, all parties acknowledged to this Court that should the automatic stay be lifted,[1] each would be ready for a January 8, 1990 trial.

## DISCUSSION

Apex seeks an order of this Court directing the estimation of the four Defendants' bankruptcy claims (the counterclaims in the *DiMauro* litigation) pursuant to 11 U.S.C. §§ 502(c)(1). Section 502(c)(1) of the Bankruptcy Code provides that:

(c) There shall be estimated for purpose of allowance under this section—

---

1. Belcher and Stinnes have filed a Motion To Lift Stay, which this Court will hear on November 8, 1989.

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

Thus, the Bankruptcy Code provides a mechanism for handling those claims which would unreasonably hamper the timely administration of a bankruptcy estate.

Numerous courts have commented on the purposes underlying the use of estimation procedures. In *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr.E.D. Va.1982), the court determined that estimation of the parties' state court claim was appropriate where liquidation of the claim would both unduly delay the progress of the case and frustrate the debtor's Chapter 11 reorganization. Facing a similar tension between a state court claim and the bankruptcy proceeding before it, the court in *In re Lane*, 68 B.R. 609, 611 (Bankr.D.Hawaii 1986) ruled that it would estimate a state court claim where liquidation of the claim would unduly delay the administration of the case. Thus, the key consideration in whether a bankruptcy court should estimate a claim pending in another forum is whether liquidation of that claim would unduly delay the debtor's Chapter 11 reorganization.

None of the parties in the instant case contends that any of the claims in question is liquidated. Each party has made it known to this Court that prompt claim liquidation is the most desirable objective. Furthermore, each party understands the absolute necessity of prompt claim liquidation as this case moves toward plan presentation and eventual confirmation and distribution.

Apex desires a preconfirmation liquidation of the defendants' counterclaims through estimation procedures for several reasons. First, the Debtor believes that estimation would bring about a rapid and final resolution to an action which has lan-guished in district court for over seven years. Second, the Debtor argues that preconfirmation liquidation offers certainty necessary for the Debtor and its other creditors to determine the substance and feasibility of the proposed plan. Relatedly, the Debtor maintains that preconfirmation liquidation would obviate the need for any holdback or reservation of money from the plan, as all parties await a resolution of the New York action. Apex believes that the Defendants' aggregated bankruptcy claims are the second largest of the remaining unliquidated claims.[2] Finally, the debtor argues that an estimation proceeding, which would limit all parties in the amount of time allowed for case presentation, would cost the estate less and therefore leave more money for creditor claims.

The Defendants desire a resolution of all claims and counterclaims in the New York District Court. In support of their position, the Defendants offer several factors for this Court's consideration. First, the New York trial could commence within two months of the date the Debtors' have filed their plan of reorganization in this Court. The Defendants further argue that there is no guarantee of plan confirmation before the *DiMauro* action is resolved.[3] Second, the Defendants have represented that they will abstain from bringing any of their antitrust claims which would likely bring the greatest delay to a resolution of the New York action. Third, the Defendants argue that because Apex's claims eventually must be litigated, the interests of judicial economy would best be served by a hearing of all claims and counterclaims in one proceeding. Finally, the Defendants have made great mention of both Judge Walker's familiarity and expertise in the *DiMauro* action and his apparent willingness to consider hearing the case to its final disposition.

 Before reaching the merits of the Motion, this Court wishes to address the

---

**2.** The Defendants filed claims in excess of $34 million, but dispute Apex's characterization that their claims comprise the second largest unliquidated claim.

**3.** Due to the apparent necessity of gaining the qualification of the Securities Exchange Commission to Trust Indenture of Apex's Plan, a hearing to determine the adequacy of the Disclosure Statement may not be set until late December at the earliest.

issue of whether, as Apex contends, this Court is *obligated* to estimate the Defendants' counterclaims. Apex has cited numerous authorities, including prior decisions of this Court, for the proposition that estimation of claims is a mandatory rather than a permissive duty of the court. *See, e.g. A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1011–12 (4th Cir.1986), cert. denied 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Apex Oil Co. v. United States Department of Energy,* 91 B.R. 860, 864 (Bankr.E.D.Mo.1988). This Court holds to its opinion that the duty to estimate is not mandatory *until* the court determines that liquidation of the claim outside of the bankruptcy court would unduly delay the bankruptcy proceeding. Additionally, it is well-established that the bankruptcy court enjoys the discretion to modify the automatic stay "for cause" including liquidation of a claim in a non-bankruptcy forum. Therefore, it is within this Court's sound discretion and not the obligation of this Court to estimate a claim.

 While the Debtor and the Defendants desire different means for resolving the *DiMauro* action, both sides desire the same end: prompt liquidation of all claims and counterclaims. This Court must therefore determine whether liquidation of the *DiMauro* action in the United States District Court of New York would unduly delay the prompt administration of the Apex estate. For reasons set forth below, this Court believes that liquidation of the parties' claims in the Southern District of New York, should a trial start January 8, 1990, would not so unduly delay administration of the case as to warrant an estimation of the Defendants' counterclaims. First, the fact that Judge Walker has both set a trial date for January 8, 1990 (should the automatic stay be lifted) and has indicated his willingness to consider retention of the case, even if his appointment to the Second Circuit is confirmed, indicates to this Court that a final disposition of the *DiMauro* action is imminent. Second, the parties have acknowledged to this Court that should the stay be lifted and a trial allowed in New York, each party would be prepared to litigate by January 8, 1990. Third, this Court acknowledges Judge Walker's familiarity and expertise in the *DiMauro* action. Surely few would dispute the fact that seven years of oversight make Judge Walker the most qualified person to guide the *DiMauro* action to its long-awaited conclusion.

Fourth, Judge Walker has stated that because the parties' claims and counterclaims arose from basically the same occurrences and transactions, they are "inextricably intertwined". If this Court chooses to grant Apex's Motion, however, it would only be permitted by law to estimate the Defendants' counterclaims. Apex's claims against the Defendants would remain unaffected by this Court's estimation and would still await litigation in the District Court. In sum, part of *DiMauro* must be litigated *regardless* of this Court's decision to grant the Motion for Estimation. The most logical, expeditious and judicially economical method of disposing of the *DiMauro* action is a full trial of all claims and counterclaims in the District Court.

Finally, while certainly not an infallible prophet, this Court believes that the timing of a plan's confirmation and the final disposition of the *DiMauro* action will not be greatly disparate. Apex filed its Plan and Disclosure Statement on October 30, 1989. Now the parties must determine the adequacy of the Disclosure Statement, and the Plan must receive confirmation from the creditors, who will then receive their distribution. Although seemingly simple, these events could become difficult, lengthy, and involved. This Court concludes, however, based upon the facts presented, that a complete liquidation of all parties' claims and counterclaims in the District Court would not *unduly* delay the administration of the Apex estate. Accordingly, it is

ORDERED that the Debtors' Motion To Estimate Claims is DENIED.