**In re BISON RESOURCES, INC., a California Corporation, Debtor.**

**Bankruptcy No. 98–04675–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 24, 1999.

Sam Bratton, II, Tulsa, OK, for Romano and Roach.

William R. Grimm, Tulsa, OK, for debtor.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion of David J. Romano ("Romano") and Glenna Jane Roach ("Roach") to Modify the Automatic Stay (the "Motion") filed on January 8, 1999, and the Objection and Response (the "Objection") of Bison Resources Corporation, Debtor ("Bison" or "Debtor"), to the Motion. An evidentiary hearing in the matter was held on February 3, 1999 (the "Hearing"). William Grimm appeared as attorney for Bison. Sam Bratton, II appeared on behalf of Romano and Roach (hereafter collectively "Movants"). John Burkhardt appeared on behalf of Pennzoil Company, Pennzoil Products Company, Consolidated Natural Gas Service Company and Dirk Andersen.[1] The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b),[2] and venue is proper pursuant to

---

1. Counsel for Movants objected to the standing of Mr. Burkhardt's clients to participate in the Hearing. The Court allowed Mr. Burkhardt to participate in the Hearing; however, Mr. Burk-hardt chose only to advise the Court that his clients also objected to the Motion.

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy

28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and it is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(G).

### Findings of Fact

Bison is a closely held corporation originally formed in California in 1969, with its current corporate offices in Haskell, Oklahoma. Bison is owned and operated by four (4) shareholders, Craig and Victoria Thompson, and Mark and Patricia Harison (hereafter collectively referred to as the "Shareholders"). The Thompsons and the Harisons each hold a joint, undivided fifty percent (50%) interest in Bison. The Debtor operates mainly as a management company for various gas and oil interests located in Pennsylvania, Texas, Wyoming, California and West Virginia. Some of the interests managed are owned by Bison, and some are owned by the Shareholders.

It is Bison's involvement with certain oil and gas interests in West Virginia which gives rise to the controversy before the Court. The Shareholders currently own a leasehold interest in two oil and gas wells located in Harrison County, West Virginia, known as J.W. Dennison No. 1 and J.W. Dennison No. 2 (the "Wells"). Bison claims to have acquired a one hundred percent (100%) working interest in the Wells by way of a lease executed in 1978. The lease under which Bison attained its interest could be traced back to an 1897 lease between the then owner of the property and what is known today as the Pennzoil Company. In 1996, Bison conveyed all of its right, title and interest in and to the Wells to the Shareholders.[3]

On May 29, 1996, the Movants filed a civil action (the "State Court Action") in the Circuit Court of Harrison County, West Virginia (the "State Court") regarding the J.W. Dennison No. 1 well. In their complaint, Movants allege that the 1897 lease which is the underpinning for the lease now held by the Shareholders had lapsed and was of no force and effect, thereby rendering any interests based upon that 1987 lease of no force and effect. In the original complaint, Movants named Pennzoil Company, Pennzoil Products Company, Dirk Andersen, Randall Wetzel, and "John Does" 1 through 5 as defendants. On August 22, 1997, Movants amended their complaint to add Bison and others as additional defendants. Movants assert claims for negligence, fraud, deceit, spoilation of evidence, concealment, failure to pay royalties, unauthorized extraction of minerals, surface damage, unauthorized removal of timber and intentional trespass with regard to the J.W. Dennison No. 1 well.

The State Court Action progressed for over two and one-half years. All pre-trial preparation was completed. On November 12, 1998, the State Court granted partial summary judgment in favor of the Movants, ruling that the right of any party to explore or extract natural gas on the Movants' property, i.e., the J.W. Dennison No. 1 well, had lapsed under the theory of abandonment. In other words, the State Court invalidated the leasehold interest claimed by the Shareholders. *See Movants' Exhibit 3.* The ruling was the apparent source of much consternation for the defendants, including Bison. Subject to the rulings granting partial summary judgment to Movants, trial by jury of the State Court Action was scheduled to commence on November 16, 1998.

As the November 16, 1998, trial date grew near, Bison became more concerned with the status of the State Court Action. As a protection against the possible adverse consequences of the State Court Action, Bison filed its Chapter 11 petition before this Court on November 10, 1998. Relying on the automatic stay provisions of 11 U.S.C. § 362, Bison did not appear for trial before the State Court on November 16, 1998.

Bison was not the only party who was concerned by the prospect of the State Court Action completing its course. On November 16, 1998, only minutes before the jury trial in

---

Code, 11 U.S.C. § 101 *et. seq.* (West 1999).

**3.** The General Warranty Deed of Assignment transferring the Wells to the Shareholders is dated "as of January 1, 1996." *See Debtor's Exhibit*

*I.* However, the signatures on this document were notarized on December 12, 1996, and the document was actually filed of record on February 4, 1997.

the State Court Action was set to begin, with a panel of prospective jurors literally standing outside the courtroom, defendants Pennzoil Company, Pennzoil Products Company, Dirk Andersen, and CNG Producing Company filed a Notice of Removal of the State Court Action from the State Court to the United States Bankruptcy Court for the Northern District of West Virginia.[4] The removal was based upon Bison's status as a Chapter 11 debtor in this Court. Defendants argued that, upon removal, the State Court lost all jurisdiction over the matter, and had no choice but to cancel the trial. Movants strenuously objected. The State Court was more than a bit perturbed by these last minute antics, threatening to incarcerate defendants' counsel if they were unwilling to remain while the State Court attempted to locate a bankruptcy judge and obtain a ruling on whether the removal was proper.[5] At last, unable to locate a bankruptcy judge, the State Court reluctantly concluded that the trial could not proceed as scheduled, and the jury was dismissed.

Upon removal, the parties' paper blizzard continued unabated. On November 17, 1998, the Movants filed their Motion to Remand the State Court Action to the State Court. On November 19, 1998, Defendants Pennzoil Company, Pennzoil Products Company, Dirk Anderson and CNG Producing Company filed a motion asking the United States District Court for the Northern District of West Virginia to withdraw the reference of the State Court Action from the Bankruptcy Court. *See Movants' Exhibit 9.* On November 24, 1998, the United States District Court for the Northern District of West Virginia entered its order requiring the United States Bankruptcy Court to submit a report and recommendation as to: (1) whether the District Court should withdraw the reference of the State Court Action; and (2) whether the State Court Action should be remanded to the State Court. One day later, the United States Bankruptcy Court for the Northern District of West Virginia submitted its Report and Recommendation to the United States District Court for the Northern District of West Virginia recommending that the case be remanded to the State Court. *See Movants' Exhibit 11.* The United States District Court for the Northern District of West Virginia adopted the bankruptcy court's recommendation in *toto* and remanded the case to the State Court in its order filed on January 7, 1999. *See Movants' Exhibit 12.* A Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) was filed by the defendants on January 7, 1999, and was denied by the District Court for the Northern District of West Virginia on February 1, 1999.

The State Court Action is now set for trial on April 26, 1999. That trial is expected to last approximately two weeks. Bison estimates that its participation in the State Court Action will result in fees in excess of $25,000.00. Mark Harison, the President of Bison, believes that the fees and expenses which Bison would incur are greater than the actual amount of damages which could be awarded against Bison.

The pre-trial posturing by Bison was not confined to the four walls of the West Virginia courthouse. On or about November 6, 1998, the Shareholders determined that it would be in their (and Bison's) best interest to reconvey the Wells to Bison. At the time this decision was made, Bison also made the decision to repay "various loans" which it had received from the Shareholders in the aggregate amount of $13,000.00. Said payments were made in the form of four separate checks dated November 8, 1998.[6] On November 17 and 18, 1998, the Shareholders executed and delivered to Bison assignments of their interest in the Wells. *See Debtor's Exhibits I and J.* Notwithstanding the actual dates of execution, the assignments state that they were made on November 6, 1998. The assignments were filed of record in the Office of County Clerk of Harrison County, Virginia

---

4. Bison did not join in the Notice of Removal.

5. *See Movants' Exhibit 5,* p. 18, lines 4 through 16.

6. Two of the checks were made payable to Mark Harison, the president of Bison, and two were made payable to Victoria Thompson.

on December 9, 1998.[7]

On December 9, 1998, the same day that the assignments were filed of record in West Virginia, Bison filed "Debtor in Possession's Motion to Compromise Claims and Enter Into Settlement Agreement and Mutual Release" (the "Motion to Compromise") with this Court. Under the terms of the Motion to Compromise, the Shareholders were to convey their interests in the Wells to Bison. In exchange, Bison was to release the Shareholders from any and all claims of any type and nature which Bison may have held against the Shareholders for any reason whatsoever, including but not limited to any claims for breach of any duty to Bison which the Shareholders may have owed to Bison in their capacity as officers and/or directors of Bison.

The Court considered the Motion to Compromise at the Hearing held on February 3, 1999. The Court refused to approve the Motion to Compromise for the following reasons:

(1) At the time of the transfer of the $13,000.00 to the Shareholders, Bison appeared to be solvent, thereby severely reducing the potential for a valid fraudulent transfer claim against the Shareholders;

(2) Under the terms of the Motion to Compromise, the Shareholders would be released from any and all claims which Bison may have against them;

(3) Under the terms of the Motion to Compromise, Bison would remain liable to the Shareholders for any damages which the Shareholders may suffer if title to the Wells was determined to be defective (i.e., if the Movants were to

ultimately prevail in the State Court Action);

(4) The circumstances surrounding the proposed compromise caused the Court great concern regarding its nature as an arms-length transaction. One of the Shareholders who personally received two of the four checks in repayment of the "loans", negotiated the "compromise" on behalf of Bison. The timing of the entire "compromise" makes it appear as though the compromise was part of a pre-petition scripted plan to place the Wells in the bankruptcy estate of Bison, for reasons about which the Court can only speculate.

The Court entered an Order on February 10, 1999, specifically denying the Motion to Compromise. *See Docket No. 56.* In the Order, the Court specifically ordered Bison to take whatever steps were necessary to void the transfer of the Wells to Bison.[8]

### Burden of Proof

"The burden of proof on a motion for relief from stay under section 362(d) is a shifting one." 3 Lawrence P. King, Collier on Bankruptcy ¶ 362.10 (15th ed. rev.1998). Section 362 holds in relevant part:

.    .    .    .    .

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

---

**7.** One should not lose sight of the fact that the assignments were executed and filed after Bison filed its Chapter 11 bankruptcy case.

**8.** After review of Exhibits No. 2 and 3 attached to the Motion to Compromise and listening to testimony at the hearing, it is evident that the deeds of assignment were not signed and/or executed until after the filing of the bankruptcy. Mark Harison testified that even though the Settlement between Bison and the Shareholders was "worked out" pre-petition, the Deeds of Assignment for the J.W. Dennison No. 1 and No. 2

wells were signed post-petition. The Shareholders backdated documents, at least making it appear at a cursory glance that the deeds of assignment were signed pre-petition. As stated in the Court's bench ruling at the Hearing, the Court will not tolerate such conduct. A debtor is required to request Court approval by way of notice and a hearing for any post-petition transactions, i.e., sale of property, which are not in the ordinary course of the Debtor's business. *See* § 363(b).

(2) the party opposing such relief has the burden of proof on all other issues.

. . . . .

§ 362(g). Courts have held that

> [s]ection 362(d)(1) requires an initial showing of cause by the movant, while section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." ... If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

*In re Sonnax Ind., Inc.*, 907 F.2d 1280, 1285 (2nd Cir.1990) (citations omitted); *see also In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr.S.D.N.Y.1994).

## Conclusions of Law

▮ Movants allege that cause exists for this Court to grant relief from the automatic stay provisions of § 362 in order to continue the State Court Action against Bison.[9] What constitutes "cause" for relief from automatic stay is determined by the bankruptcy court on a case-by-case basis. *See Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir.1987). A determination as to whether the automatic stay should be lifted in a particular case is left to the sound discretion of the bankruptcy judge. *Id.*

▮ Many courts have held that

> "Cause" for granting relief from the [automatic] stay may exist if the equities in a particular case dictate that a lawsuit, or some other particular pending action, should proceed in a forum other than the bankruptcy court for the purpose of liquidating the claim on which the lawsuit is premised.

*In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008, 1013 (Bankr.N.D.Ala.1996) (citations omitted) (footnote omitted) (hereafter

*"Marvin Johnson"*); *accord, In re Tricare Rehabilitation Systems, Inc.*, 181 B.R. 569, 572 (Bankr.N.D.Ala.1994). The *Marvin Johnson* court outlined various factors which should be considered in balancing the equities in order to determine whether cause exists for granting relief from the automatic stay:

> The practical question before this Court is whether the state court lawsuit should continue in the forum in which it originated or whether Mr. Franks must proceed solely by proof of claim in the bankruptcy court. To answer this question, this Court must balance the hardship to Mr. Franks, if he is not allowed to continue the lawsuit, against the potential prejudice to the debtor, the bankruptcy estate, and to other creditors. To aid in balancing these equities, the Court should consider certain factors. These are: (1) trial readiness; (2) judicial economy; (3) the resolution of preliminary bankruptcy issues; (4) costs of defense or other potential burden to the estate; (5) the creditor's chances of success on the merits; (6) specialized expertise of the non-bankruptcy forum; (7) whether the damages or claim that may result from the nonbankruptcy proceeding may be subject to equitable subordination under Section 510(c); (8) the extent to which trial of the case in the non-bankruptcy forum will interfere with the progress of the bankruptcy case; (9) the anticipated impact on the movant, or other nondebtors, if the stay is lifted; and, (10) the presence of third parties over which the bankruptcy court lacks jurisdiction.

*Marvin Johnson*, 192 B.R. at 1014 (footnotes omitted). Not all of the factors need to be present in order for relief to be granted, and a court need not give equal weight to each particular factor. *See In re Unanue–Casal*, 159 B.R. 90, 96 (D.P.R.1993); *compare In re Johnson*, 115 B.R. 634, 635–636 (Bankr. D.Minn.1989) (decision to lift stay is made on

---

9. Section 362(d) states in relevant part:
    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

  (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
  § 362(d)(1).

case-by-case basis dependent upon unique circumstances of case, considering various factors). The Court will review each of the factors identified in *Marvin Johnson* in turn.

### Trial Readiness

■ The State Court Action is now scheduled for trial April 26, 1999. All pretrial preparation is complete. This factor supports the granting of the relief requested.

### Judicial Economy

Bison argues that the issues which relate to it are narrower than the issues outstanding in the State Court Action, and that trial in the bankruptcy court of the issues relating to Bison will be relatively simple. Movants disagree, and argue that a trial before this Court would involve most if not all of the issues in the State Court Action. Were the Court to deny relief from the automatic stay, the effect would be to bifurcate trial of the issues in the State Court Action between the State Court and this Court. Such bifurcation would not further the principle of judicial economy. In addition, the Court notes that certain preliminary rulings have been made in the State Court Action. Were this Court to try that portion of the dispute relating to Bison, it is possible that the two courts could reach inconsistent conclusions, resulting in appeals at both the state and federal levels. Such a result would further frustrate the goal of judicial economy.

### Resolution of Preliminary Bankruptcy Issues

Neither Movants nor Bison have identified any preliminary bankruptcy issues which must be addressed before the State Court Action can proceed.

### Cost of Defense

■ Bison has estimated that it will cost approximately $25,000.00 for Bison to defend itself in the State Court Action, and argued that this potential expense to the estate is sufficient cause to deny the Motion. This Court disagrees. While the cost of defense is a factor to be considered, that factor, standing alone, is ordinarily insufficient reason to deny relief from the automatic stay.

See *Marvin Johnson,* 192 B.R. at 1016; *see also In re Santa Clara County Fair Association, Inc.,* 180 B.R. 564, 566 (9th Cir.BAP 1995); *see also In re United Imports, Inc.,* 203 B.R. 162, 169 (Bankr.D.Neb.1996).

### Movants' Chances of Success on the Merits

This Court is not ideally situated to assess the likelihood of Movants' chances of success in the State Court Action. The Court notes that Movants have been successful on many preliminary pretrial issues in the State Court Action, including a determination that the leases underlying Bison's claimed interests in the Wells are invalid. See *Movants' Exhibit 3.* In light of this ruling, it appears that Movants have demonstrated a significant chance of success on the merits.

### Specialized Expertise of the State Court

Although the State Court is a court of general civil jurisdiction, it is better equipped than this Court to deal with issues pertaining to West Virginia oil and gas law. Indeed, some of the litigants in the State Court Action have argued that the pretrial rulings of the State Court "established a new rule of law in West Virginia and reversed a century of existing landowner and industry practice." See *Movants' Exhibit 9,* page 3. This Court sees no reason to interject itself into a dispute on the cutting edge of the law of the state of West Virginia relating to oil and gas rights. Such issues are best left to the State Court.

### Equitable Subordination

Neither party to the Motion has argued that the claim of Movants, if any, would be subject to equitable subordination under § 510 of the Bankruptcy Code.

### Extent to Which Trial of the State Court Action Will Interfere With the Bankruptcy Case of Bison

As noted above, trial in the State Court Action is scheduled to commence April 26, 1999. Said trial will commence (and in all likelihood be completed) long before this Court could conclude an evidentiary hearing relating to Movants' claim.[10] Accordingly,

---

10. After review of its docket, this Court has determined that it would not have time to try any

objection to the claim of Movants prior to May or

the Court concludes that trial of the State Court Action will enhance Bison's ability to reorganize in this Court.

*Anticipated Impact on Nondebtors if the Stay is Lifted*

This factor appears to be inapplicable.

*Presence of Third Parties Over Which the Bankruptcy Court Lacks Jurisdiction*

The State Court Action involves parties other than Debtor and the Movants. There is no showing that this Court has jurisdiction over any of those parties. There is no dispute that the State Court has jurisdiction over all of the parties to the State Court Action. Significant jurisdictional challenges may well be avoided if the State Court Action is tried to completion.

*Section 502(c)*

■ Bison also argues that relief from the automatic stay is inappropriate because this Court has a "mandatory obligation to determine the allowance and/or estimation of the contingent and unliquidated claim of the Movants [Roach and Romano] in accordance with 11 U.S.C. § 502(b)(1) and (c)(1)." *Objection*, ¶ 2. Under Bison's theory, the Court *must* hear and determine the validity of Roach and Romano's claims because Bison has requested that it do so. The Court disagrees in this case because the issues between Romano, Roach and Bison can be timely adjudicated in the State Court.

Section 502(c)(1) provides that

There shall be estimated for purposes of allowance under this section—

(1) any contingent or unliquidated claim, *the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.*

(emphasis added). Bison argues that this section places a mandatory obligation on the shoulders of the bankruptcy court to determine every claim which the debtor requests under this section. Such an argument ignores the plain language of the statute, which requires such estimation only when necessary to avoid "undue delay" in the administration of the estate. The argument raised here by Bison was also raised by the debtor

June of 1999, assuming the parties were ready by

in *In re Apex Oil Company*, 107 B.R. 189 (Bankr.E.D.Mo.1989). The analysis of the Court in that case is instructive here:

Before reaching the merits of the Motion, this Court wishes to address the issue of whether, as Apex contends, this Court is obligated to estimate the Defendants' counterclaims. Apex has cited numerous authorities, including prior decisions of this Court, for the proposition that estimation of claims is a mandatory rather than a permissive duty of the court. *See, e.g. A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1011–12 (4th Cir.1986), *cert. denied* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Apex Oil Co. v. United States Department of Energy*, 91 B.R. 860, 864 (Bankr.E.D.Mo.1988). *This Court holds to its opinion that the duty to estimate is not mandatory until the court determines that liquidation of the claim outside of the bankruptcy court would unduly delay the bankruptcy proceeding. Additionally, it is well-established that the bankruptcy court enjoys the discretion to modify the automatic stay "for cause" including liquidation of a claim in a non-bankruptcy forum. Therefore, it is within this Court's sound discretion and not the obligation of this Court to estimate a claim.*

*Id.* at 192–193 (emphasis added); *see also International Brotherhood of Teamsters v. IML Freight, Inc.*, 789 F.2d 1460, 1463 (10th Cir.1986) ("Section 502(c) requires that such unliquidated claims must be estimated for allowance *if liquidation of the claim would unduly delay closing of the case.*") (emphasis added). Cases which have described the duty of the bankruptcy courts to estimate claims as "mandatory" have also found that liquidation of the claim outside of the bankruptcy forum would result in undue delay in the bankruptcy case. *See, e.g., In re Frontier Airlines, Inc.*, 137 B.R. 811, 814 (D.Colo. 1992) (affirming court noted that "bankruptcy court made express findings as to the need for estimation given the ... delay and inconsistency which could result from an individualized liquidation process"); *In re Lane*, 68 B.R. 609, 611 (Bankr.D.Hawai'i 1986) (resolution in state court would require

that time.

retrial of action after conclusion of appeal); *In re Nova Real Estate Inv. Trust,* 23 B.R. 62, 65 (Bankr.E.D.Va.1982) (claim estimated where no trial date set in state court litigation).

In the present case, the State Court Action is set for trial on April 26, 1999. Any action under § 502(c) would not be completed in this Court prior to that date. There is nothing in the record to indicate that completion of the State Court Action would unduly delay the administration of this bankruptcy case. Debtor has filed neither a plan nor a disclosure statement; nothing before the Court is being held in abeyance as a result of the State Court Action. The best course of action is for this Court to allow trial of the State Court Action to proceed. Any finding of liability against Bison in the State Court Action will be eligible for treatment as a claim in this case, should Movants avail themselves of their right to file a claim.[11]

### Conclusion

■ Cause exists for the lifting of the automatic stay in order to allow the State Court Action to proceed to trial against all parties, including Bison. The Court grants relief from the automatic stay to allow the State Court Action to proceed to judgment. Movants may not, however, take any steps to enforce said judgment *against Bison.*[12]

A separate judgment is entered concurrently with this Memorandum Opinion.

### ORDER

THIS MATTER comes before the Court pursuant to the Motion of David J. Romano and Glenna Jane Roach to Modify the Automatic Stay filed on January 8, 1999, and the Objection and Response of Bison Resources Corporation, Debtor to the Motion. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED THAT the Motion of David J. Romano and Glenna Jane Roach to Modify the Automatic Stay be, and the same hereby is, granted.

IT IS FURTHER ORDERED that the automatic stay provisions contained in 11 U.S.C. § 362 are hereby modified to permit the State Court Action, as that term is defined in the Memorandum Opinion, to proceed to trial and judgment in the Circuit Court of Harrison County, West Virginia, against Bison Resources Corporation.

IT IS FURTHER ORDERED that in the event a judgment is entered against Bison Resources Corporation in the State Court Action, no proceedings in execution on such a judgment may be had against Bison Resources Corporation without further order of this Court, it being the intent of this Court that any such proceedings in execution remain subject to the provisions of 11 U.S.C. § 362.

United States Bankruptcy Court,
E.D. Oklahoma.

---

11. As of the date of this ruling, neither of the Movants have filed a claim in this case.

12. Nothing in this ruling is intended to or should be construed as an effort by this Court to limit the ability of Movants to enforce any judgment they may receive in the State Court Action against the parties to the State Court Action other than Bison. Those parties have no right to protection under 11 U.S.C. § 362.